[L. A. No. 25452. In Bank. Nov. 30, 1959.]

MARY STODDART et al., Respondents, v. WILLIAM G. PEIRCE et al., Appellants.

Fitzgerald, Cozy, Gyger & Nelson, W. Walter Livingston, Jr., Smith & Wilson and Andrew V. Smith for Appellants.

John R. Allport, Betts, Ely & Loomis, Ball, Hunt & Hart, Clarence S. Hunt, Hunter & Liljestrom, Harold J. Hunter, Bronson, Bronson & McKinnon, Partridge, O'Connell & Partridge, Bledsoe, Smith, Cathcart, Johnson & Phelps and Wilbur J. Russ as Amici Curiae on behalf of Appellants.

Pray & Price and William C. Price for Respondents.

PETERS, J.—This appeal from a judgment in favor of plaintiffs in a personal injury action presents two questions of law not hitherto determined by the appellate courts of this state, both dependent upon a proper interpretation of section 402 of the Vehicle Code* (Owner's Liability Law).[1] The action

*Reporter's Note: All citations in the opinion refer to the sections of the Vehicle Code as they existed prior to the 1959 recodification.

[1] Section 402 provides that "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle . . . by any person using or operating the same with . . . permission . . ." No portion thereof deals with the meaning or definition of the word "owner," except paragraph (f) which specifically provides that neither the conditional vendor nor the chattel mortgagee shall be deemed an owner for the purpose of such liability.

arises from a collision between a vehicle in which plaintiffs were riding and a vehicle operated by the defendant Maines. Maines had purchased his car from defendant Nance Chevrolet Company, which had previously received it from defendant Peirce as a turn in on the purchase price of another car. Plaintiffs sued Maines as both operator and owner, and joined Nance and Peirce as owners on the theory that title also remained in each of them. Maines defaulted, and there being no conflict in the evidence, the trial court directed verdicts against all defendants, leaving to the jury only the question of damages. From the judgment entered on those verdicts, Nance and Peirce have appealed.

Insofar as the liability of either Peirce or Nance Chevrolet Company is concerned, the following undisputed facts are pertinent.

On January 28, 1956, Peirce, the original owner, traded the vehicle in question to Nance, a bonded dealer, as part of the down payment on a new car. He endorsed the certificate of ownership (pink slip) and delivered it, together with the registration card and the car, to Nance. He failed to insert the date on the line provided therefor on the certificate of ownership.[2]

Nance held the car and the documents as delivered to it by Peirce, without sending any notice of the transfer to the Department of Motor Vehicles at that time.[3]

On February 7, 1956, Nance sold the car to Maines, under a conditional sales contract, and gave immediate delivery. At the time of the sale a "Dealer Notice"[4] was filled out on the form provided by the Department,[5] and was dated and executed by both Nance and Maines. On the reverse side of this form the department has printed certain information and instructions, including a statement that the document consti-

---

[2] Vehicle Code, section 176, provides that it is unlawful for any person to fail or neglect to endorse, date and deliver the certificate of ownership or to fail to deliver the registration card "to a transferee who is lawfully entitled to a transfer of registration."

[3] Vehicle Code, section 180, authorizes a dealer to take possession of and hold a vehicle and the certificates of registration and ownership without giving notice to the Department until a subsequent transfer takes place.

[4] Vehicle Code, section 177, subdivision (b), requires that upon transferring a vehicle to a purchaser, a dealer give notice of the sale to the Department of Motor Vehicles upon an appropriate form, provided by the Department, "not later than the end of the next business day."

[5] Vehicle Code, section 129, gives the Department of Motor Vehicles the power and duty of providing suitable forms "requisite or deemed necessary for the purposes of this code."

tutes "notice of sale to the Department as required by the Vehicle Code and will serve as such notice pending receipt and filing of the original copy of Dealer's Report of Sale with its accompanying application, required documents and fees." This "Dealer Notice" was not mailed to the Department by Nance prior to "the end of the next business day," but was mailed shortly thereafter, and was received by the Department on February 14, 1956, one week after date of sale to Maines.

On March 6, 1956, approximately three weeks subsequent to receipt by the Department of notice of the transfers, the collision occurred which gave rise to the plaintiffs' injuries.

On April 25, seven weeks after the accident, the Department received from Nance the "Dealer's Report of Sale" (also provided by the Department), together with registration card and certificate of ownership as originally endorsed by Peirce, together with the necessary fees to accomplish transfer of registration. The notice was dated February 7, 1956. The Department then caused reregistration, issuing new certificates to Maines, with a lending institution as legal owner.

Based upon these facts Peirce (whose previous motion for summary judgment had been denied) and Nance separately moved for nonsuit, directed verdict and judgment notwithstanding the verdict, all at the appropriate times, and each motion was denied. That the trial court was in doubt regarding its rulings is indicated by its several statements and comments in which it admitted uncertainty as to the applicability of the several statutes. The court expressed the opinion that the purpose of the code provisions in their entirety was simply to give notice prior to an accident, together with a doubt that the existing decisions would uphold this point of view. The trial judge thereupon determined to direct verdicts against all defendants, and stated his hope that such judgment would be appealed in order to allow the appellate courts an opportunity to speak.

From this statement of facts two problems arise:

1. Shall a bonded dealer in motor vehicles be held liable as an owner within the provisions of section 402 of the Vehicle Code when it has complied with all provisions of that code regarding notice of transfer, save and except that it has not mailed the "Dealer's Notice" within the period prescribed by section 177, subdivision (b), but has delivered the same to the Department of Motor Vehicles some 20 days prior to the accident on which liability is predicated?

2. Shall the original seller be held liable as an owner when he endorsed the certificate of ownership and delivered it to the dealer, together with the vehicle and the registration card, all at the time of the first sale, as provided by the Vehicle Code, except that he failed to insert the date upon the certificate of ownership as provided in section 176, and thereafter the dealer resold the vehicle under the circumstances related above?

The proper solution of these problems depends upon a proper interpretation of various sections of the California Vehicle Code, most of which are contained in chapter 2 of division 3 (§§ 175 to 186, inclusive) entitled ''Transfers of Title or Interest.'' By their terms, these code sections make reference to one another, and some incorporate certain provisions of the others. Under such circumstances, each must be interpreted in light of the whole. To avoid the necessity of summarizing the total substance of the chapter, the individual sections, and their relationship to one another, are set forth in the pertinent portions of the text, above and below.

The respondents contend, and the trial court held, that either a failure of a dealer to comply literally with the provisions of section 177 (mailing notice prior to the end of the next business day), or a failure of an individual transferor to date his endorsement of the certificate of ownership (§ 176), is sufficient to deny such defaulting party the relief afforded by section 178 (releasing the transferring owner from liability under section 402).[6] It is urged that this result is compelled by the provisions of section 186, which appears to void an attempted transfer if the transferor has failed to fulfill one of its alternative requirements.[7] The first alternative requires an endorsement and delivery of the certificates, *as provided by the code,* together with delivery thereof to the Department by the transferee. The second alternative requires that the

[6]*Section 178* provides that an owner who has made a bona fide sale and delivery of the vehicle shall not be held liable under the provisions of section 402 if he has *either*: (a) Made a ''proper'' endorsement and delivery of the certificate of ownership (pink slip) and delivered the registration card ''as provided in this code''; or (b) mailed or delivered to the Department either a notice as provided in section 177, ''within the time prescribed in such section, or appropriate documents for registration . . . pursuant to such sale . . .''

[7]*Section 186* provides that ''no transfer of the title or any interest . . . shall pass and any attempted transfer shall not be effective unless and until the parties thereto have fulfilled either of the following requirements: . . .'' (1) Endorsement and delivery of the certificates ''as provided in this code'' *together with delivery thereof and application*

transferor shall have mailed to the Department the documents necessary to effect the transfer.

As to Peirce, respondents argue that he chose the first alternative. They admit that the language of the section exempted him from the second portion of the first requirement by reason of delivery to a dealer who (under § 180)[8] need not notify the Department pending resale. But, they urge, he did not fulfill that portion of the requirement which made it mandatory that he endorse the certificate "as provided in this code." This contention is based solely upon his failure to date his endorsement as provided in section 177. As a result thereof, they claim that Peirce remained an owner until such time as the vehicle was entirely reregistered under the provisions of section 181.[9] Such did not occur until after the accident.

Respondents' contention regarding Nance is similar, but based upon the provisions of a different code section. It is urged, and the trial court held, that Nance, by failing to comply with the time limit provided in section 177, subdivision (b), also remained an owner until the vehicle was reregistered.

In support of these contentions respondents cite several appellate decisions. While it is true that many of these authorities contain general language in apparent support of the judgment of the court, not one of them goes beyond holding that similar failure to comply with the pertinent code sections defeats the transferor's exemption from liability under section 402 *in those instances wherein no notice of the transfer has been received by the Department of Motor Vehicles prior to the occurrence of the accident.*

The contentions of appellants are varied. Peirce argues

*for transfer by the transferee to the Department* (unless such requirement is waived by the provisions of § 180), or (2) delivery to the Department, by the transferor, of the documents necessary to effect the transfer or registration (except as he may be exempted therefrom by reason of compliance with § 178).

[8]*Section 180* exempts a dealer from the provisions of section 179 while such dealer, as transferee, is holding the vehicle for resale and does not operate the same except with special dealer plates; but this section further provides that upon transferring such vehicle to a third person, the dealer shall deliver the certificates to the purchaser, and shall give notice of the transfer to the Department "upon the appropriate forms provided by it."

[9]*Section 181* provides that upon receipt of a properly endorsed certificate of ownership and the proper registration card, together with the required fee, the Department shall reregister the vehicle in the name of the new owner or owners. All parties to this appeal admit that such reregistration would operate to relieve the former owners from liability for an accident which occurred thereafter, even though the section requires a "properly endorsed certificate of ownership."

that by endorsing and delivering the certificates, together with the car, he was relieved of all further liability. His argument is based in part upon the proposition that section 402, having created a new and unusual liability which did not exist at common law, must be construed favorably to the persons against whom it is to be applied. In addition, he claims that section 178, which releases a transferor from liability when he has taken certain steps, does not require that the certificate of ownership be dated when delivered to the transferee for the reason that the code sections, when read as a whole, do not disclose a legislative intent to require such "date" in order to bring the provisions of section 178 into operation. This latter argument assumes that the words "proper endorsement and delivery" do not have the same significance as that phrase of section 186 which requires that title shall not pass without endorsement "as provided in this code."

The balance of the Peirce arguments may be summarized in the claim that even if a lack of date at the time of endorsement could operate to bar his relief under section 178, it was cured by either of two subsequent acts. The date "2/7/56" was endorsed on the certificate by Nance and Maines at the time of the second transfer, which was prior to the date on which delivery of the certificate to the Department became mandatory; and, Nance subsequently (and prior to the accident) sent the "Dealer's Notice" to the Department, showing Peirce's title to have been legally transferred to Maines. In support of each of his contentions he cites California authorities, none of which deal with the precise problem involved herein.

The arguments in favor of appellant Nance are set forth in its own briefs and in briefs filed by several amici curiae. These arguments are: (1) in order to determine a dealer transferor's liability under section 402, that statute must be read and interpreted in light of sections 186, 177 and 178; (2) the provisions of section 178 relieve a dealer when he has delivered *or mailed* a notice of transfer to the Department; (3) that in requiring the notice to be mailed prior to the end of the next business day the legislative purpose was to ease, rather than to extend, the earlier statutory rule requiring "immediate notice"; (4) that the legislative purpose in adopting and amending sections 177, 178 and 186 was to provide identification of vehicles and persons responsible in cases of accident and injury, and not to enlarge the number

of persons responsible under section 402; (5) that previous decisions indicate the rule to be that the date of mailing notice to the Department, and not the date of receipt thereof, determines the date on which the dealer will be relieved from the provisions of section 402;[10] (6) that as a result, the Legislature must have intended to relieve the dealer when it mailed notice, even if such notice was mailed later than the "end of the next business day," so long as the notice was mailed prior to the accident on which liability was predicated. Also urged throughout these briefs are the facts that strict interpretation, as given by the trial court, will create insurmountable hardship to automobile dealers in this state which was never intended by the Legislature, and that section 402 must be strictly construed in favor of those persons against whom its provisions are urged.

There are some matters common to both problems presented. ▮ There is no doubt that the word "owner" as used in section 402 for the purpose of creating a liability thereunder, is not synonymous with that word as used in the ordinary sense of referring to a person or persons whose title is good as against all others. Under the Vehicle Code there may be several such "owners" at any one time. One or more persons may be an "owner," and thus liable for the injuries of a third party, even though no such "owner" possesses all of the normal incidents of ownership (*Dorsey* v. *Barba,* 38 Cal.2d 350, 353 [240 P.2d 604]).

▮ It has also been held that strict compliance with the provisions of section 178 (and its allied sections) is required before such an owner may escape the liability imposed by section 402 in regard to an accident which occurs *before* notice is received by the Department (*Ferroni* v. *Pacific Finance Corp.,* 21 Cal.2d 773 [135 P.2d 569]; *Votaw* v. *Farmers A. Inter-Ins. Exchange,* 15 Cal.2d 24 [97 P.2d 958, 126 A.L.R. 538]; *Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co.,* 130 Cal.App.2d 158 [278 P.2d 493]; *Rosenthal* v. *Harris Motor Co.,* 118 Cal.App.2d 403 [257 P.2d 1034]; *Weinberg* v. *Whitebone,* 87 Cal.App.2d 319 [196 P.2d 963]; *Gutknecht* v. *Johnson,* 62 Cal.App.2d 315 [144 P.2d 854]; *Leplat* v. *Raley Wiles Auto Sales,* 62 Cal.App.2d 628 [145 P.2d 350]; *Helmuth* v. *Frame,* 46 Cal.App.2d 372 [115 P.2d 846]; *Guillot* v. *Hagman,* 30 Cal.App.2d 582 [86 P.2d 865]; *Bunch* v. *Kin,* 2 Cal.App.2d 81 [37 P.2d 744]).

[10]The decisions cited do not so hold.

This rule, however, is not necessarily applicable to the facts of a case wherein there was compliance (although late) with all of the terms of the statutes long prior to the accident which caused plaintiffs' injuries. None of the cases cited above go so far as to hold that failure to mail notice ''prior to the end of the next business day'' creates a continuing liability which can only be cured by reregistration. Whether or not, in light of all of the applicable statutes, the failure to literally comply creates a continuing liability, or whether such failure may be cured by subsequent notice to the Department before an accident occurs, is the basic question to be determined.

The relevant code sections cannot, properly, be interpreted without reference to other sections in the same chapter. These sections must, if possible, be interpreted as a whole so as to give effect to the legislative intent as expressed in the entire chapter.[11] All such must be reconciled and harmonized if possible (45 Cal.Jur.2d, Statutes, pp. 624 to 654 and cases cited). This task is made difficult because the sections in the chapter have been amended and reamended over the years, and some new sections added, with the inevitable result that some inconsistencies appear. If a strict and literal interpretation of each section were indulged in, out of context to the whole, there would be some amazing results. A few examples will suffice to illustrate this point.

The provisions of section 176 make it unlawful for a transferor to fail to deliver the certificate of ownership to a transferee. Yet the provisions of subdivision (a)(2) of section 186 and of section 178 are designed to relieve a transferor of liability as an owner if he delivers or mails the same certificate to the Department. Thus the latter sections would seem to sanction an act made unlawful by the provisions of the former. Such a result was, of course, not the legislative intent.

Another example of language which should not be construed in a strict or literal sense is found in section 186. It provides that ''No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties . . .'' shall have performed one or more of several alternative acts. Insofar as the legal title of the party failing to comply with the statutory requirement, or his liability to a third person is concerned there is little doubt that the quoted language means just what it says. But this does not mean that no

---

[11] These sections are 175 to 186 and 402 of the Vehicle Code.

equitable title passes from a defaulting transferor or to a defaulting transferee, or that as to either of them the transfer is entirely ineffective. Such an interpretation would defeat the primary purpose of the statute and relieve a defaulting transferee of liability to a person injured in an accident involving the vehicle which he has failed to register. It would also defeat the obvious legislative intent to hold that, as between the parties, the law recognized no transfer of a financial interest merely because one or more of the parties failed to comply with the registration statutes. Under such an interpretation, an entirely innocent bank or finance company would be without power to collect the purchase price which it advanced to the dealer, merely because that dealer failed to comply with registration requirements.

It should also be pointed out that literally construed section 186, quoted above, infers that no transfer shall be effective and no title or interest shall pass if the various requirements are not complied with in the time provided by the several code sections. These provisions, construed alone, would forever bar a legal transfer if the time limitation once passed—for nowhere has the Legislature specifically provided a cure for such default. Both parties hereto have conceded, and the concession is a proper one, that this was not the legislative intent. It is obvious that section 181 must be interpreted to mean that a transfer becomes effective for all purposes when—regardless of the time factor—the Department receives endorsed certificates and reregisters the vehicle according thereto. This result necessarily follows although section 181 refers to receipt of ''properly endorsed'' certificates.

These apparent inconsistencies all disappear when the sections are construed as a whole and in the light of the legislative intent disclosed by the entire chapter.

Without now documenting a complete historical narrative of these various provisions of the code, it may be noted that originally the provisions now found in Division III were adopted for the purpose of protecting innocent purchasers, and to afford identification of vehicles and of persons responsible in cases of accident and injury (*Henry* v. *General Forming, Ltd.*, 33 Cal.2d 223, 227 [200 P.2d 785] ; *Dorsey* v. *Barba*, 38 Cal.2d 350, at p. 354 [240 P.2d 604] ; *Rainey* v. *Ross*, 106 Cal.App.2d 286 [235 P.2d 45] ). That is, they formed a recording system, designed to accomplish in regard to this mobile type of personal property some of the things that the real estate recording statutes accomplish in regard to land

and its improvements. At the time of their original enactment (1913), section 402 (first enacted in 1929 as Civ. Code, § 1714¼) with its theory of liability of the nonoperating owner had not yet been adopted.

The first major addition appeared when changing economic and social conditions required modern financing. It then became necessary to separate the registration of the legal and equitable titles and to provide for the activities of the dealer in light of these changed conditions. Bonded dealers were authorized to acquire and hold vehicles without reregistering the same and, so long as they did not operate them upon the public highway, were exempted from giving notice to the Department. They were, however, required to give notice "immediately" upon transferring to another purchaser. The dealer was not required to reregister "immediately," but merely to mail a notice to the Department. The lapse of time provided between notice and reregistration was provided in order to permit the dealer to effect financing of the new owner's purchase. Immediate mailing of notice was necessary to protect the dealer against the "owner's" liability between the time of transfer and the time of reregistration. Failure to so provide would have opened the door to fraud. If not required, a dishonest dealer whose vehicle was involved in an accident could have otherwise antedated a spurious transfer and sent the documents to the Department. Thus when the permission to defer registration is considered with the requirement of "immediate" notice the purpose of the latter becomes clear.[12]

The legal effect of sending this notice to the Department was to exempt the dealer from liability for an accident which occurred subsequent to transfer but prior to receipt of notice by the Department, but only if the dealer strictly complied and mailed such notice "immediately." If he did so comply, his exemption became effective on mailing, even though the notice was not received by the Department for some time thereafter.

Subsequently, it became apparent to the Legislature that the strict interpretation given by the courts to the word "immediate" was creating an unintended hardship on the dealers. As a consequence, section 177 was amended to its present form, providing that the dealer might mail such notice at any time prior to the end of the next business day after

---

[12]Such leeway has never been provided for the nondealer transferor or transferee, who are required to reregister immediately unless they transfer to or from a bonded dealer.

transfer. That amendment did no more or less than enlarge the specific period during which a dealer might mail notice in order to gain the advantage of exemption while such notice was in transit. It did not alter the basic reasoning behind the specific statute, nor the reasons for the registration statutes as a whole. Still inherent in the statutes, as an entirety, were and are these basic concepts:

1. Registration of vehicles, somewhat like the recording of real property, is designed, among other reasons, for the protection of purchasers and injured parties, principally by affording identification of vehicle and person;

2. To accomplish these purposes, registration must be speedy and substantially in compliance with the requirements set forth in the code section;

3. Bonded dealers are authorized to omit some of the requirements prescribed for all other transferees and transferors;

4. To implement the purpose of the statutes in those instances wherein a dealer need not immediately reregister, he may not place the vehicle upon the highway without attaching thereto a plate or tab identifying himself therewith, and may not transfer without giving notice thereof to the Department in lieu of reregistration;

5. To avoid an otherwise inequitable result, the dealer is exempted from an owner's liability when he transfers a vehicle to a third party;

6. In order to prevent fraudulent practices (particularly the antedating of transfers) such a dealer is required to mail a notice of the transfer to the Department within a specified time, as required of other transferors (although the time limitation differs);[13]

7. In the case of all transferors (individual and dealer, alike) exemption from owner's liability becomes effective upon the mailing of such notice within the period provided.[14]

When these statutory purposes are considered, the language of the specific statutes, as it may be applicable to the contentions of the parties hereto, can be harmonized and reconciled.

*The liability of Nance:*

 Respondents contend that if Nance is relieved from liability under section 402, this court would have to disregard

---

[13]Section 177, subdivision (a).
[14]Section 178.

a long line of established authority which holds that a transferor who fails to comply with the provisions of section 178 (which in turn incorporates the provisions of section 177) is liable as an owner (see cases cited on page 115, *ante*). But these authorities, as already pointed out, only hold that a transferor who has not mailed the notice within the prescribed time limit does not obtain the advantage of exemption from liability while the notice is in transit. In each such case, the accident which gave rise to plaintiff's injury occurred prior to receipt of notice by the Department. None, therefore, can be authority for the claim that the transferor's obligation continues after receipt of full information by the Department. No case so holding has been pointed out to us, and we have found none.

It seems quite obvious that when the sections are considered as a whole, it must be held that when the Dealer's Notice reaches the Department, and contains full information properly identifying the vehicle and all parties, and places each in its or his relative position in regard to the transactions which have taken place, all prior to the accident in question, then every purpose of the statutory requirements has been fulfilled, and complete protection has been given to the public.[15] To hold otherwise would be to read into the legislation a penalty which the Legislature could not have intended, and which is not specifically expressed in any code section. Although subdivision (a) (2) of section 178 refers to mailing the notice ''within the time prescribed'' in section 177, this language cannot be deemed as an imposition of such penalty. Section ·178 merely specifies two alternative methods of obtaining exemption from the provisions of section 402. It does not purport to provide a method of transferring title, such being the function of sections 175, 176, 177 and 179. Nothing in the language of section 178 indicates that it provides the exclusive methods of avoiding liability. When section 181 and other cited sections are read together with sections 177 and 178 it must be held that receipt of full information by the Department before the accident also terminates the transferor's liability.

Respondents urge that such interpretation is unsound because Nance failed to strictly comply with either of

---

[15]It should be noted that nothing contained herein indicates an opinion that in the event of failure to comply literally with the provisions of section 178, a transferor may be relieved of owner's liability by notice of or application for transfer of title which reaches the Department subsequent to the accrual of a cause of action against the operator of the vehicle.

the two alternatives of section 186, and that as a result no transfer of title was accomplished prior to the accident. But, for reasons already stated, this contention is unsound. Nance did comply with the provisions of subdivision (a)(1) of section 186 before the accident occurred. That subdivision provides for endorsement and delivery of the documents to the transferee, *and* delivery thereof by the latter to the Department, for reregistration, *except as otherwise provided by section 180*. The latter section exempts the dealer from such action, so long as he does not drive the vehicle on the highway (except under special plates) and does, on transfer to a third party, "give notice of such transfer to the department upon the appropriate form provided by it." Nothing contained either in subdivision (a)(1) of section 186 or in section 180 refers to any time limit in which the dealer must give notice. The notice sent in this case was on the form provided by the Department. Thereon the Department had printed the following language: "This stub form will constitute notice of sale to the Department as required by the Vehicle Code and will serve as such pending receipt and filing of the original copy of Dealer's Report of Sale with its accompanying application, required documents and fees."

 It is also urged that such an interpretation fails to give any effect to that portion of section 177, subdivision (b), which requires the notice to be mailed "not later than the end of the next business day of the dealer." The argument is unsound. The interpretation contained in this opinion gives to that phrase the effect which it always had. If the dealer mails within the limited time, he receives the advantage of exemption during the period his notice is in transit; otherwise he does not.

 Nance, having fully complied with all requisites of notice more than three weeks prior to the accident, cannot be held as an "owner" under the provisions of section 402.

*The liability of Peirce:*

As to Peirce the same principles are applicable. It must be held that section 178 does not necessarily provide the exclusive method of obtaining exemption in the event that title has already passed and notice has been given to the Department prior to accident, and section 186 is not a bar to passage of title if compliance with its provisions is had prior to such accident.

 Peirce's only failure to comply with the first alter-

native of the code section was his oversight in not placing the figures ''1/28/56'' on the certificate of ownership when he delivered the same to Nance. Other than that, he endorsed and delivered both certificates, and because Nance was a dealer both delivery thereof to the Department and application for transfer by the transferee was waived. It is contended that the failure to date was fatal because the section provides that endorsement and delivery shall be ''as provided in this code,'' and one of the code provisions (§ 176) is that the certificate be dated.

It is significant that section 176 is the only section in the chapter which mentions dating of an endorsement. Sections 175 and 186 (dealing with transfer of title and manner of endorsement) are both silent as to date. It could be argued from this fact that the insertion of a date was not intended to be part of a ''proper endorsement,'' or of the endorsement ''as provided by this code.'' It is not necessary to determine this point. If it be assumed that dating of the endorsement is a condition precedent to passage of title, in the instant case such condition was fulfilled on February 7th—ten days later. On that date both Nance and Maines endorsed their names *and the date* on the same certificate, and gave notice thereof which was received by the Department on February 14th. That notice completely identified the vehicle as the same which had previously been registered in Peirce's name and gave the Department all of the information required to indicate that title had passed from Peirce no later than February 7th. The fact that Peirce actually sold to Nance ten days prior to that date is of no significance, since the requirement of dating an endorsement (if it be a requirement) can only be for the purpose of fixing a date prior to which the transferor will be deemed as having been the owner. At the most, Peirce's failure to date his signature could have created a liability on his part had the accident occurred between January 28th and February 14th (on which date the Department received the notice that transfer had been completed on February 7th). The accident occurred on March 6th.

The record shows that the certificate of ownership (which Peirce failed to date) did not reach the Department until April 25th (subsequent to the accident). But this fact is of no importance, because the provisions of section 180, incorporated in subdivision (a)(1) of section 186, made it unnecessary to send the certificate to the Department for the purpose of passing title. Under these circumstances, it cannot

be held that the failure to place the figures ''1/28/56'' on a document which, under the law, did not have to be and was not sent to the Department until weeks after the accident, could possibly operate as a permanent bar to transfer of title.[16] On the contrary, it must be held that when all other steps required to accomplish transfer of title have been complied with, any requirement that the date of transfer be furnished is met by notice to the Department, prior to any accident, of a previous date on which such compliance was complete.

The principal defendant (Maines) having defaulted, judgment was properly entered against him. As to each of the appellants, however, the undisputed evidence indicates but one result as a matter of law. A new trial would serve no purpose. The judgment against William G. Peirce and Nance Chevrolet Company is reversed, and the cause is remanded with instructions to the trial court to enter judgment in accordance with the views herein expressed.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and White, J., concurred.

Respondents' petition for a rehearing was denied December 30, 1959.

---

[16]It is significant, but not controlling, that among the exhibits in this case is a cancelled certificate of ownership, previously held by Peirce, and which the Department accepted and for which it issued a new certificate for the purpose of releasing the claim of the company through which Peirce financed the car. That certificate appears to have been endorsed by the finance company without insertion of a date in the blank provided therefor, or otherwise. It is also noted that the entire re-registration was processed by the Department even though the exact date of Peirce's endorsement has never been placed on the certificate.