**In re Anthony Lynn GUILLORY and Angelina Anita Guillory, Debtors.**

**Steven Leonard, Plaintiff,**

**v.**

**Anthony Lynn Guillory, Defendant.**

**Bankruptcy No. RS01–01–25955 MG.**
**Adversary No. RS01–1612 MG.**

United States Bankruptcy Court,
C.D. California,
Riverside Division.

Sept. 27, 2002.

G. Thomas Leonard, Esq., Fullerton, CA, for Plaintiff.

Melvin D. Horowitz, Esq., Beverly Hills, CA, for Defendant.

## MEMORANDUM DECISION

PETER H. CARROLL, Bankruptcy Judge.

Plaintiff, Steven Leonard ("Leonard") seeks a judgment determining that his claim against Defendant, Anthony Lynn Guillory ("Guillory"), a chapter 7 debtor, should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6). The Court conducted a trial in this adversary proceeding on September 9–10, 2002. The Court has considered the evidence and testimony adduced at trial, and the arguments of the parties. This memorandum of decision constitutes the Court's findings of fact and conclusions of law [1] pursuant to Fed.R.Civ.P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed.R. Bankr.P. 7052.

### I. Statement of Facts

On or about April 18, 2000, Leonard and Guillory agreed to exchange vehicles. Leonard needed a work truck, and Guillory was interested in automobile racing. At that time, Guillory owned a 1986 Ford F–350 pickup truck, VIN # 2FDKF37L9GCA99294, bearing license number 5V81224 issued by the State of California ("Ford pickup"), and Leonard owned a Jeep race car and trailer (hereinafter referred to, collectively, as "the Joker"). On April 18, 2000, Guillory took possession of the Joker from Leonard, and Leonard took possession of the Ford pickup from Guillory.

Guillory and Leonard disagree as to whether there was any agreement to permanently trade or change ownership of the vehicles. According to Leonard, the parties entered into an oral agreement to trade *ownership* of the vehicles. Leonard agreed to exchange ownership of the Joker in consideration for ownership of Guillory's Ford pickup, plus an additional $1,500 to be paid to Leonard. Leonard had ac-

---

**1.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

quired the Joker the previous year from Jim Williams for the sum of $6,000. Leonard believed the Ford pickup was worth approximately $3,500 at the time of the transaction because it needed engine work, and the $1,500 was included to equalize the transaction. The parties further agreed that Leonard would deliver the Joker trailer's certificate of title when Guillory delivered the certificate of title to the Ford pickup. Leonard understood from Guillory that the Ford pickup's certificate of title had been misplaced by Guillory while moving and would have to be located. Pending an exchange of title documents, Leonard prepared a Bill of Sale to evidence the transaction. The Bill of Sale, which was admitted as Plaintiff's Exhibit 1, bears a signature which Leonard contends is Guillory's.

Leonard had possession of the Ford pickup for approximately six months. During that period, Leonard made valuable improvements to the Ford pickup in reliance on the transaction. Leonard made extensive repairs to the motor, and installed a water tank, water pump, lift gate, running lights, generator, and other equipment used in his trade as a concrete cutter. Guillory never delivered to Leonard the certificate of title to the Ford pickup, although repeatedly requested by Leonard to do so. Leonard testified that the pickup, with the equipment and repaired motor, was worth approximately $15,000.

Guillory, on the other hand, denies the existence of any contract with Leonard and maintains that the parties merely exchanged temporary *possession* of the vehicles. Guillory reasons there was no mutu-al assent by the parties, which is essential to a valid contract, because he did not intend a mutual exchange of ownership. Guillory further denies that his signature appears on the Bill of Sale. Guillory points out that the Bill of Sale does not mention the Joker nor the $1,500 alleged to be paid as part of the transaction. Guillory admits that he knew Leonard was making improvements to the Ford pickup, but, nevertheless, did not take any action to prevent him from investing money into the vehicle. Guillory also testified that he knew Leonard wanted the Ford pickup's certificate of title to transfer title to his name. However, Guillory never discussed the matter with Leonard nor took any action to correct what Guillory alleges was Leonard's misconception of the transaction. Guillory reasons that he was within his rights to obtain possession of the vehicle nearly six months later because he still possessed title to the pickup.

At approximately 3:00 a.m. on October 21, 2000, Guillory caused Paradigm Recovery, a professional repossession service, to seize the Ford pickup from Leonard's residence. The West Covina police were at the scene standing by while the repossession company seized the vehicle. Leonard ultimately was given twenty minutes to remove some of his personal property from the vehicle. However, it is undisputed that the Ford pickup was taken with the following personal property owned by Leonard still attached: (a) a generator; (b) stainless steel water tank, and (c) a lift gate. Guillory testified that he did not contact Leonard to discuss a return of the Ford pickup prior to seizing the vehicle[2] nor did he make any effort to return the

---

**2.** Guillory testified that he tried to call Leonard "a couple of times," once he decided he wanted the Ford pickup back, *i.e.*, one call to Leonard's cell phone and one call to his house. Guillory also testified that he drove by the house a couple of times, but never spoke to Leonard.

Joker prior to seizing the pickup.[3] On October 24, 2000, Guillory applied for a duplicate certificate of title to the Ford pickup alleging that he had "lost title in storage due to moving." On October 26, 2000, the California Department of Motor Vehicles issued Guillory a duplicate certificate of title to the Ford pickup.

On January 7, 2001, Guillory returned the Joker to Leonard, together with the generator, water tank, and a tool box containing various parts for the Joker. By that time, Leonard had filed a lawsuit against Guillory in state court for damages. Guillory never returned the lift gate to Leonard. Guillory filed for chapter 7 relief on September 24, 2001—one day before trial of the state court lawsuit pending between Leonard and Guillory was to commence.

## II. Discussion

■■■ This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is appropriate in this Court. 28 U.S.C. § 1409(a). To prevail under 11 U.S.C. § 523(a)(2)(A) or (a)(6), the plaintiff must establish the allegations of the complaint by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir.1994). Objections to the dischargeability of a debt are to be literally and strictly construed against the objector and liberally construed in favor of the debtor. *Quarre v. Saylor (In re Saylor)*, 108 F.3d 219, 221 (9th Cir.1997). A bankruptcy court has jurisdiction to enter a monetary judgment in conjunction with a finding that a debt is non-dischargeable. *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir.1997).

### A.

Leonard asserts that on April 18, 2000, Guillory knowingly and intentionally made a false representation that he would deliver to Leonard a certificate of title to the Ford pickup, and that Leonard justifiably relied on Guillory's false representation to his detriment. Leonard further contends that Guillory "secretly intended to retain the certificate of title while he waited for his opportunity to have the truck picked up by the repossession company." [Leonard's Brief, p. 8, 1.18–20].

■■■ Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt ... for money, property, services, or an extension, renewal, or refinance of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To establish that a debt is nondischargeable under § 523(a)(2)(A), the creditor must show by a preponderance of the evidence that (a) the debtor made the representations; (b) at the time, debtor knew the representations were false; (c) debtor made them with the intention and purpose of deceiving the creditor; (d) the creditor justifiably relied on such representations, and (e) the creditor sustained the alleged loss and damage as the proximate result of such representations. *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 827 (9th Cir. 2002); *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir.2000). The debtor's knowledge and fraudulent intent may be shown by circumstantial evidence and in-

---

**3.** Indeed, Guillory testified at one point that he and Leonard never spoke to one another after they "traded" vehicles.

ferred from the debtor's course of conduct. *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 66 (9th Cir. BAP 1998). *Cf. In re Devers*, 759 F.2d 751, 753–54 (9th Cir. 1985). Section 523(a)(2)(A) prevents the discharge of all liability arising from fraud, including both punitive and compensatory damages. *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 1219, 140 L.Ed.2d 341 (1998).

█ The weight of credible evidence establishes that Guillory represented to Leonard on April 18, 2000, that he would deliver a certificate of title to the Ford pickup in conjunction with their agreement to trade vehicles. However, the evidence is insufficient to support a finding that Guillory knew the representation was false at the time it was made on April 18, 2000, or that he made the representation with the intention to deceive Leonard on April 18, 2000. Rather, the evidence supports a finding that Guillory failed to perform as represented to Leonard because he later became dissatisfied with the transaction. Accordingly, Leonard's claim against Guillory is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

## B.

Alternatively, Leonard argues that his claim against Guillory should be excepted from discharge as a "willful and malicious injury by the debtor to . . . the property of another entity." 11 U.S.C. § 523(a)(6).

█ Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Section 523(a)(6) applies only to intentional torts, which "generally require that the actor intend the consequences of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

Generally, debts arising from intentional breaches of contract are not excepted from discharge under § 523(a)(6). *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir.1992). However, when an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6). *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir.), *cert. denied*, 533 U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001); *Riso*, 978 F.2d at 1154.

### 1. *Whether There Was A Contract Between the Parties*

█ Based upon the record, the Court finds that on April 18, 2000, Leonard and Guillory agreed to trade *ownership* of the vehicles, *i.e.*, Leonard agreed to trade Guillory ownership of the Joker in consideration for ownership of the Ford pickup, plus $1,500. Leonard's testimony concerning the transaction on April 18, 2000, is corroborated by the testimony of Jim Williams, who testified that Guillory admitted to him "I did the deal. I traded my pickup for the race car and $1,500." Leonard's version of the story is also corroborated by the conduct and admissions of the parties after April 18, 2000, from which the Court can conclude that the parties intended to exchange permanent ownership of the vehicles. While denying the existence of an agreement, Guillory treated the Joker as his own. He installed another motor in the Joker at a cost of nearly $4,000 and raced the vehicle until approximately August 2000. He admitted referring to the transaction as a "trade" and telling co-workers after the trade that the Joker was "his race car." Based upon the testimony of Anne Silver, the Court further finds that Guillory's signature appears on the Bill of Sale. After April 18, 2000, Guillory owned the Joker and Leon-

ard owned the Ford pickup. The mere fact that Guillory did not transfer to Leonard a certificate of title to the vehicle did not, of and by itself, prevent Leonard from becoming the owner of the Ford pickup.[4] A transfer of a property interest in a motor vehicle is effective as between the immediate parties even though they have not complied with the registration statute. *Plotkin v. Pomona Valley Imports (In re Cohen)*, 199 B.R. 709, 714 (9th Cir. BAP 1996).

### 2. Tortious Conduct

 To determine whether Guillory's conduct was tortious, the Court must look to California state law. *See Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir.1999) ("While bankruptcy law governs whether a claim is nondischargeable under § 523(a)(6), this court looks to state law to determine whether an act falls within the tort of conversion."). Under California law, "[c]onduct amounting to a breach of contract becomes tortious only when it violates an independent duty arising from

principles of tort law." *Jercich*, 238 F.3d at 1206, *quoting Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 460 (1994).

 Conversion is the wrongful exercise of dominion over the property of another. The elements of conversion under California law are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages. *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 543–44, 50 Cal. Rptr.2d 810 (1996). Based upon the evidence, the Court finds that Leonard was the owner[5] of the Ford pickup at the time it was seized by Paradigm Recovery at the specific direction of Guillory on October 21, 2000. Guillory wrongfully assumed ownership and control of the Ford pickup to the exclusion of Leonard's rights of ownership and possession in the vehicle. Leonard sustained damages as a proximate cause of Guillory's wrongful conduct.

---

4. The Vehicle Code § 5600, *et. seq.*, makes an additional requirement for passage of title from seller to buyer in the sale of a motor vehicle. The title must be registered with the State of California, Department of Motor Vehicles, which issues a certificate of ownership and a registration card. Cal. Veh.Code § 4450, *et. seq.* (West 2000). The certificate of ownership is issued to the legal owner of the vehicle. The registration card is issued to the owner. Where no security interest has been created, ownership is not divided and both the certificate and the card are issued to the owner. Cal. Veh.Code § 4450 (West 2000). The principal purposes of the registration requirements are the protection of innocent purchasers and the identification of vehicles and persons responsible in the event of accidents. *See Stoddart v. Peirce*, 53 Cal.2d 105, 346 P.2d 774 (1959).

Generally, a purported transfer of title or interest, other than an involuntary or security transfer, which fails to comply with the requirements of Vehicle Code § 5600 is ineffective. Vehicle Code §§ 5600, 5601. Lack of

compliance may render the sale void. It is unlawful for the seller to fail or neglect to deliver the certificate of ownership or registration card to the buyer. Cal. Veh.Code § 5753 (West 2000). However, title may pass to the buyer by *estoppel*, despite the failure to transfer title. The estoppel doctrine has been invoked to protect the buyer in good faith, despite the seller's failure to comply with the statutory requirement to transfer the certificate of ownership. *See Dennis v. Bank of America*, 34 Cal.App.2d 618, 94 P.2d 51 (1939). *See also* Witkin Summary of California Law § 222(2) (9th ed.1987).

5. Having relinquished his rights in the Joker to Guillory, Leonard was at least the equitable owner of the Ford pickup on October 21, 2000. Guillory's refusal to tender the certificate of title prevented Leonard from being record owner of the vehicle on October 21, 2000. *See Cohen*, 199 B.R. at 714 (9th Cir. BAP 1996).

The measure of damages for conversion is the fair market value of the property at the time of the conversion, plus interest from that date. In addition, the plaintiff may recover fair compensation for time and monies properly expended in pursuit of the property. Cal. Civ.Code § 3336 (West 2000). In this case, Leonard testified that the Ford pickup was worth $15,000 at the time of the conversion. On April 18, 2000, Leonard valued the Joker at approximately $5,000 when it was transferred to Guillory. On January 7, 2001, the Joker was returned to Leonard, together with the generator, water tank, and water pump which were still on the Ford pickup when it was taken. The lift gate remained affixed to the Ford pickup and was never returned to Leonard. While there is little evidence as to the value of the Joker when it was returned by Guillory, Guillory testified that the Joker was returned in the same rolling chassis condition as he received it, *i.e.*, less the motor.

Defendant's Exhibit "A" is a Kelley Blue Book Trade–In Report dated February 25, 2002, indicating that the trade-in value of a 1986 Ford F–350 Long Bed pickup, with hydraulic lift and 200,000 miles, on February 25, 2002, was $2,535. The Court accords little weight to Defendant's Exhibit "A" because Leonard testified that the Ford pickup had less than 200,000 miles and Exhibit "A" fails to address the fair market value of the vehicle on the date of the conversion—October 21, 2000. There was no evidence as to the value of the motor that was with the Joker when it was traded by Leonard to Guillory nor whether that motor was ultimately returned to Leonard. There was also no evidence concerning the time and monies, if any, expended in pursuit of the property. Based on the record, the Court finds that Leonard sustained actual damages as a proximate result of Guillory's conversion in the amount of $9,000.

### 3. *Willfulness & Maliciousness*

Section 523(a)(6) requires separate findings on the issues of "willful" and "malicious." The "willful" injury requirement of § 523(a)(6) is met "when it is shown either that the debtor had a subjective motive to inflict injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146–47 (9th Cir.2002); *Jercich*, 238 F.3d at 1208. A "malicious injury" involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Jercich*, 238 F.3d at 1209.

In this case, Guillory' conversion of Leonard's property was both willful and malicious. The record reveals that Guillory was disenchanted with automobile racing within four months after trading his Ford pickup for the Joker. He had lost his job with Jim Williams and wanted his truck back.[6] Guillory testified at his deposition that he told his friend and co-worker, Roberto Clemente, that he intended to get his truck back. Guillory knew that Leonard relied on the Ford pickup in his business. Guillory testified at trial that he knew Leonard had invested up to $5,000 improving the Ford pickup since April 18, 2000, but took no action to prevent Leonard from investing money into the vehicle. Guillory also testified that he knew Leonard wanted the Ford pickup's certificate of title to transfer title to his name, but he never discussed the matter with Leonard nor took any action to either correct Leon-

---

**6.** Guillory testified that he no longer worked for Jim Williams by August 2000. Guillory further testified that he had a "falling out" with Leonard, and he decided to "cut all ties" with everyone, give up racing, and get his truck back.

ard's alleged misconception of the transaction or to rescind the transaction.

Guillory, having repeatedly ignored Leonard's efforts to obtain the Ford pickup's certificate of title, used the fact that he was still record owner of the vehicle to seize it from Leonard. Prior to seizing the Ford pickup, Guillory made no meaningful attempt to contact Leonard to return the Joker or to make arrangements to obtain possession of the Ford pickup. Instead, Guillory contacted Paradigm Recovery to seize the Ford pickup without notice from Leonard. Guillory intentionally caused the Ford pickup to be seized at approximately 3:00 a.m. on October 21, 2000, knowing that: (a) Leonard and his family, including a small child, would be at home; (b) Leonard had a volatile temperament; (c) the West Covina police would be standing by, and (d) Leonard's tools and equipment would be in the vehicle and attached thereto. Guillory's plan to regain possession of the Ford pickup was calculated and purposeful. Guillory claims that he instructed Paradigm Recovery not to take Leonard's tools, but there is no evidence of any meaningful attempt by Guillory to make certain that Paradigm Recovery did not seize Leonard's personal property along with the Ford pickup. Indeed, the evidence establishes that Kathy Williams telephoned Guillory while the Ford pickup was being seized, but Guillory did nothing in response to the telephone conversation to mitigate the situation.

Accordingly, the Court finds that Guillory's conversion was malicious in that it was wrongful, done intentionally, necessarily caused injury to Leonard, and was done without just cause or excuse. Furthermore, the evidence supports a finding that Guillory's conversion was willful because he had a subjective motive to inflict injury on Leonard.

4. *Punitive Damages*

 Given the facts and circumstances here, the question is whether Leonard is entitled to punitive damages under his § 523(a)(6) claim. California law permits an award of exemplary damages when the defendant is guilty of "oppression, fraud or · malice." Cal. Civ.Code § 3294(a) (West Supp.1996). Exemplary damages are properly awardable in an action for conversion, given the required showing of malice, fraud or oppression. Because Leonard's § 523(a)(6) claim arose from conversion, Leonard is entitled to exemplary damages under Cal. Civ.Code § 3294(a). *In re Butcher,* 200 B.R. 675, 680 (Bankr.C.D.Cal.1996).

 The three criteria for determining the amount of punitive damages that should be awarded are: (1) the reprehensibility of the defendant's actions; (2) the amount of compensatory damages, although there is no fixed ratio for determining whether punitive damages are reasonable in relation to actual damages, and (3) the defendant's financial condition—the wealthier the wrongdoer, the larger the punitive damage award must be to meet the goals of punishment and deterrence. *See Klause v. Thompson (In re Klause),* 181 B.R. 487, 494–95 (Bankr.C.D.Cal.1995). Having considered the factors in light of the evidence adduced at trial, the Court awards Leonard punitive damages in the amount of $15,000.

III. Conclusion

Guillory's debt to Leonard totaling $24,000 arose from willful and malicious injury caused by Guillory's tortious conduct. For the foregoing reasons, the Court will enter judgment awarding the sum of $24,000 to Leonard and excepting the $24,000 debt from discharge under 11 U.S.C. § 523(a)(6). A separate judgment

will be entered which is consistent with this opinion.