**AMERICAN CASUALTY CO. v. MARY-
LAND CASUALTY CO.**

No. 20062.

District Court, E. D. Pennsylvania.

Sept. 30, 1937.

Frank P. Martin, of Pittsburgh, Pa., for plaintiff.

Richard A. Smith, of Philadelphia, Pa., for defendant.

MARIS, District Judge.

This is an action for contribution. The statement of claim discloses these facts:

On July 30, 1930, the plaintiff issued a policy of liability insurance to Claverie's Pharmacy (hereinafter called the assured), in Asheville, N. C., upon a Harley-Davidson motorcycle, model 29—J, serial No. 12666, to cover the legal responsibility of the assured for personal injuries and death to others as specified therein. On February 9, 1931, defendant likewise issued its policy to the same assured on the same motorcycle to cover the same legal responsibility for personal injuries and death. This policy was issued in renewal of a prior policy issued by the defendant on February 9, 1930, upon the same motorcycle. On September 5, 1930, the assured sold the motorcycle referred to and described in the policies mentioned and purchased in its place a Harley-Davidson motorcycle, model 29—JD, engine No. 13963, but failed to advise either of the casualty companies of the transaction, and at no time was either policy issued by the defendant transferred or indorsed to cover this newly purchased motorcycle.

On May 23, 1931, while operating the newly purchased motorcycle, Julian Miller, an employee of the assured, struck and injured Rudolph Alonzo, who thereafter brought suit against the assured and Miller jointly for damages for the injuries so sustained. Prior to the bringing of the suit and within a day or two after the occurrence of the accident, the assured reported the same to both plaintiff and defendant, and the agents and representatives of each proceeded to make an investigation into the facts and circumstances and conferred with each other. In the course of this investigation Gray L. Page, a representative and adjuster of the defendant, ascertained the discrepancy in the identity of the motorcycle involved in the accident with that named in the policies of insurance, and he informed representatives of the plaintiff and the assured that it was not the intention of the defendant to take advantage of said discrepancy nor to deny the coverage of defendant's policy in connection with the accident. He took the position, however, that he did not consider that there was any legal responsibility on the part of the assured in the occurrence of said accident.

Upon the institution of suit by Alonzo the assured referred the papers to the plaintiff, who employed counsel to defend the action, and upon the trial thereof a judgment of voluntary nonsuit was entered. Thereafter Alonzo brought another action which was also defended by counsel employed by the plaintiff. Upon the trial of the second action judgment was rendered against the assured and Miller in the sum of $5,000, which judgment upon appeal was affirmed.

Thereafter plaintiff notified the assured that it disclaimed coverage for the reason that its policy did not cover the motorcycle involved in the accident. Thereupon the assured brought suit against the present plaintiff, which suit was removed to the United States District Court for the Western District of North Carolina which entered judgment for the defendant. Upon appeal to the Circuit Court of Appeals for the Fourth Circuit that court reversed the judgment, and in obedience to its order judgment was entered by the District Court in favor of the assured and against the present plaintiff in the sum of $5,113.10 on May 14, 1935. Claverie v. American Casualty Co. of Reading, Pa. (C.C.A.) 76 F.(2d) 570.

On November 1, 1935, the plaintiff paid the judgment so rendered with interest amounting in all to $5,841.66, together with $224 court costs. In addition the plaintiff expended in counsel fees, in connection with the defense of the two actions brought by Alonzo against the insured and in the defense of the suit brought by the Assured upon the policy contract, the sum of $1,609.65, its total expenditure being $7,675.31. The present suit was brought to secure a contribution from the defendant of one-half of this amount.

The defendant has filed an affidavit of defense raising the question of law whether the plaintiff has stated a cause of action. After full consideration we have reached the conclusion that this question must be decided in defendant's favor for the reasons which we shall enumerate.

■■ Plaintiff, if it is to succeed in its claim for contribution, must show at the outset that the defendant was liable at the time of the accident to the assured upon a policy of liability insurance which covered the motorcycle involved in the accident. This primary obligation on its part has not been met. On the contrary, the statement clearly shows that defendant's policy did not cover that motorcycle but rather a motorcycle which the assured had previously owned and which had been sold more than eight months prior to the accident. The defendant's obligation was to indemnify against damages caused by the use of that particular motorcycle. When the assured parted with that motorcycle, the defendant's liability under the policy ceased. This is clearly ruled by the case of Root v. Lumber Mut. Casualty Insurance Co., 116 N.J.Law 124, at page 125, 182 A. 627, 628, in which the New Jersey Court of Errors and Appeals, speaking through Mr. Justice Bodine, said:

"The plaintiffs, having recovered a judgment, still unsatisfied, by reason of an automobile collision with one Stone, brought an action under the statute against the defendant insurance company. Stone had been insured in the defendant company against loss while operating a '1929 model' Nash sedan. At the time of the accident, he was driving a '1931 model' having traded cars without attending to the transfer of insurance. It is conceded that the nonsuit was proper, unless the proofs established either a waiver or an estoppel. It is important to note that the company had no knowledge that the

insured had exchanged cars until after the accident.

"If a company insures against loss by fire occurring on Blackacre, it is obvious that it is under no obligation for a fire on Whiteacre simply because the owner of Blackacre, previous to the fire, exchanged that property for Whiteacre. The policy in suit indemnified the insured against liability imposed by law by reason of the use of a specified automobile, and no liability occurred from such use. The injury to the plaintiff occurred while Stone was driving an uninsured car. The indemnity is from damages caused by the use of specified property. Whatever the defendant company did nor did not do with respect to the premiums on the policy covering the car not involved in the accident is immaterial. The company never asserted that it did not insure the risk in the operation of the 1929 car, but it did assert, as it had a right to do, that it had never written a policy covering the use of the 1931 car. In fact, it was not requested to insure such risk until after the accident occurred."

It is equally clear that liability under the policy could not be transferred to cover the newly acquired motorcycle without the knowledge and consent of the defendant. Nor would the fact that an adjuster of the defendant stated to the plaintiff's representative and the assured that the defendant did not intend to deny coverage operate to create such liability. The adjuster had no authority to bind the defendant by any such statement since the policy provided that "An agent has no authority to change this Policy, or to waive any of its provisions. * * * No change whatever in this Policy, and no waiver of its provisions, shall be valid unless an endorsement be added hereto, signed by either the President, a Vice-President, the Secretary or an Assistant Secretary of the Company, expressing such change or waiver." Nor could these representations form the basis for liability by estoppel. In this connection the following language of Mr. Justice Bodine in Root v. Lumber Mut. Casualty Insurance Co., supra, is peculiarly applicable (at page 125 of 116 N.J.Law, 182 A. 627, 628):

"The policy in suit specifically provides that no changes should be made therein, except by endorsement signed by the president or one of the vice presidents and by the secretary or assistant secretary. Mere statements by a so-called 'resident repre-sentative in New Jersey,' without proof of his authority, could not be the basis for an estoppel against the assertion of a defense predicated upon the clearly expressed terms of the instrument itself. Further, had it been legally possible, in spite of the provision of the policy to vary the terms of the writing by parol, still there is nothing to indicate that the insured in any legal sense altered his position by reason of the assertion by the representative that the company would protect him. The loss had been incurred. He was promptly notified that the company disclaimed all liability, and he was afforded full opportunity to defend himself. The bare assertion by a representative whose authority was not shown that an insurance company would take care of an uninsured loss could not amount to a waiver of the fundamental requirement that the company's policies be in writing duly signed, nor could the company thereby be estopped from asserting that its liability was fixed by the terms of its contracts and not by the vague assertions of a so-called resident representative."

We do not consider the fact that the defendant's policy in suit was issued after the sale of motorcycle which it covered to be material. This policy was but a renewal of the prior policy issued when the motorcycle in question was owned by the assured, and in the absence of notice of the sale defendant was entitled to assume that the motorcycle insured remained in the assured's possession. The policy was issued by the defendant under a mistake of fact for which the responsibility rests with the assured and it was therefore void. This is not a case of a mere discrepancy in the machine numbers or description of the vehicle covered by the policy, nor is it a case where the identity of the vehicle so covered is disputed. Consequently St. Paul Mercury Indemnity Co. of St. Paul v. Long (C.C.A.) 85 F.(2d) 848, and the other cases cited by the plaintiff have no application. Here it clearly appears from the plaintiff's statement that the defendant's policy definitely described a motorcycle which was not involved in the accident in question.

Our conclusion on this question finds ample support in the opinion of the Circuit Court of Appeals for the Fourth Circuit in Claverie v. American Casualty Co. of Reading, Pa., supra. That was the case in which that court held the plaintiff in the present case liable to indemnify

564

the assured for the damages paid to Alonzo, the party injured in the accident. The court placed the plaintiff's liability squarely upon the ground of estoppel, arising from the fact that it had indorsed its policy to cover the new motorcycle shortly after the accident and had defended the assured during the entire litigation brought by Alonzo. The court held that this conduct gave rise to an estoppel which precluded the insurer from making the defense upon which it might otherwise have relied. It is not contended, however, that any of the defendant's actions have estopped it from setting up the same defense. Consequently; the grounds upon which the plaintiff was held liable on its policy do not apply to the defendant. The Circuit Court of Appeals clearly indicated that the plaintiff would not have been liable had it not been for its conduct which gave rise to the estoppel. We therefore conclude that the plaintiff has failed to lay the necessary basis for its claim to contribution by the defendant.

■ But even if. it should be held that the defendant was liable to the assured upon its, policy it does not follow that the plaintiff would be entitled to contribution in this action. Each of the policies in question contained a "co-insurance" clause providing as follows: "If the named Assured carry any other insurance covering concurrently a claim covered by this Policy, he shall not recover from the Company a larger proportion of any such claim than the sum hereby insured bears to the whole amount of valid and collectible concurrent insurance." Under this clause the obligations of the plaintiff and defendant upon their respective policies, if valid, were separate and independent. Each would be liable for one-half of any claim, and, if either should voluntarily pay more than its proportionate share, it would not be entitled to contribution from the other. Southern Surety Co. v. Commercial Casualty Ins. Co. (C.C.A.) 31 F.(2d) 817. As was said by . Judge Thomson in the opinion of the District Court, affirmed per curiam in the case just cited [at page 819 of 31 F.(2d)]:

"It is a fundamental principle that in order to create a right of contribution, the plaintiffs must have been legally liable to pay, and must have actually paid under compulsion and obligation, that for which both plaintiffs and defendant were equally liable. This does not sufficiently appear by the averments of the bill taken in connection with the three contracts, the interpretation as to the true meaning of which is a question of law for the court."

It follows that if, as the plaintiff contends, the defendant was liable upon its policy the plaintiff was only liable for one-half of the claim. Its failure to interpose the defense of coinsurance to the remaining half of the claim in the suit by the assured against it must either have been a voluntary act on its part or in effect an admission that the defendant was not liable on its policy, and that coinsurance, therefore, did not exist. In either case no right of contribution from the defendant could arise.

The questions of law raised by the affidavit of defense are decided in favor of the defendant, and, since they dispose of the whole of the plaintiff's claim, judgment may be entered for the defendant.