[Civ. No. 21217. First Dist., Div. One. Jan. 2, 1964.]

CANADIAN INDEMNITY COMPANY et al., Plaintiffs and Appellants, v. MOTORS INSURANCE CORPORATION, Defendant and Respondent.

Edward A. Friend for Plaintiffs and Appellants.

Low, Ball & Norton and Antone G. Cincotta, Jr., for Defendant and Respondent.

SULLIVAN, J.—Plaintiffs appeal from an adverse judgment rendered after a nonjury trial in an action for declaratory relief.

Plaintiff Linda Hall desired to purchase a Ford Thunderbird automobile of which the Bank of America, hereafter called the Bank, was legal owner and one Robert E. Ditsch, registered owner. On May 23, 1961, Mrs. Hall applied to the Bank for an approval of her credit to the end of financing her purchase of the car. On May 26, 1961, Ditsch gave Mrs. Hall physical possession of the Thunderbird and on May 29, 1961, the parties entered into a written agreement under the terms of which Ditsch transferred to her all of his equitable interest in the automobile. On the same day, May 29, Ditsch executed a power of attorney in favor of the Bank empowering the latter to execute in his name any certificate of ownership necessary to transfer any registration of said vehicle. The Bank did not use this power of attorney until June 2,

1961, after it had approved Mrs. Hall's credit at which time the Bank signed Ditsch's name at the place designated on the certificate of ownership ("pink slip") for release of ownership by the registered owner. On the same day, June 2, 1961, Mrs. Hall affixed her signature to the certificate of ownership at the place designated for application for transfer by new registered owner. The Bank remained the legal owner. The certificate properly executed was thereupon transmitted to the Department of Motor Vehicles.

In the meantime, on May 30, 1961, four days after she took possession of the car, Mrs. Hall while driving the Thunderbird became involved in an accident as a result of which said automobile was damaged to the extent of $349.26. On such date, Mrs. Hall was insured under a "family combination automobile policy" issued to her by plaintiffs The Canadian Indemnity Company and The Canadian Fire Insurance Company (hereafter collectively called "Canadian") and covering her Oldsmobile. The policy provided that Canadian would "pay for loss caused by collision to the owned automobile or to a non-owned automobile" on a so-called $100 deductible basis. In an "other insurance" clause, it also provided that "the insurance with respect to a temporary substitute automobile or non-owned automobile shall be *excess* insurance over any other valid and collectible insurance." (Italics added.)

Ditsch also was insured at the time of the accident by defendant Motors Insurance Corporation, hereafter called Motors. This policy covered the Thunderbird and, among other things, provided for collision coverage on a $50 deductible basis. It was cancelled effective June 23, 1961.

Mrs. Hall paid the $349.26 for the repairs to the Thunderbird. She and Canadian thereupon commenced the instant action. As disclosed by the pleadings and the pretrial conference order, plaintiffs' position is briefly this: Ditsch owned the Thunderbird at the time of the accident. At such time he had collision coverage for the car afforded by Motors. Mrs. Hall was an additional insured under the Motors' policy as a driver with Ditsch's express permission. Defendant Motors' position is that Ditsch was not the owner at the time of the accident and that consequently it was not liable under its policy to pay the damages.

The trial court found, so far as is here pertinent, that neither policy was cancelled until after May 30, 1961, the date of the accident; that Ditsch sold the Thunderbird to

Mrs. Hall on May 29, 1961 "in compliance with the pertinent provisions of the Vehicle Code"; that the car was damaged to the extent of $349.26 while being operated by Mrs. Hall; and concluded that the policy issued by Motors "did not cover the automobile, or any operator thereof, after May 29, 1961." Judgment was rendered for defendant for costs.

Basically the question which we face is this: Was Ditsch the owner of the Thunderbird at the time of the accident? Plaintiffs contend that he was because he had not complied with the provisions of sections 5600 and 5602 of the Vehicle Code.[1] It is argued that while Ditsch delivered possession of the vehicle to Mrs. Hall, he had neither endorsed and delivered the certificate of ownership nor notified the Department of Motor Vehicles prior to the occurrence of the accident. The facts underlying this argument are not disputed. On May 26, 1961, Ditsch delivered possession of the car to

---

[1]Vehicle Code section 5600 as in effect at the time of the transactions here involved provided as follows: "No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, until the parties thereto have fulfilled either of the following requirements:

"(a) The transferor has made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed the certificate and card in the United States mail addressed to the department when and as required under this code with the proper transfer fee and thereby makes application for a transfer of registration except as otherwise provided in Sections 5905, 5906, 5907 and 5908.

"(b) The transferor has delivered to the department or has placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of the vehicle pursuant to the sale or transfer except as provided in Section 5602." (N.B. §§ 5905-5908 are not pertinent to the issue at hand. Section 5600 was amended in 1963 (Stats. 1963, ch. 1858, § 10).)

Vehicle Code section 5602 provides: "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of the vehicle so as to be subject to civil liability for the operation of the vehicle thereafter by another when the owner in addition to the foregoing has fulfilled either of the following requirements:

"(a) When he has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in this code.

"(b) When he has delivered to the department or has placed in the United States mail, addressed to the department, either the notice as provided in Section 5900 or Section 5901 or appropriate documents for registration of the vehicle pursuant to the sale or transfer."

Mrs. Hall. On May 29, 1961, he signed a document purporting to transfer his equity therein to her. Although he also executed on May 29 a power of attorney authorizing the Bank to endorse the certificate of ownership, such transferor's endorsement was not made and Mrs. Hall's signature as transferee was not affixed until June 2, 1961. It is beyond contradiction that prior to the occurrence of the accident on May 30, 1961, neither of the requirements prescribed by section 5600 of the Vehicle Code had been fulfilled and no transfer of title pursuant to such section effectuated.[2] The above evidence is not in conflict and not reasonably susceptible of conflicting inferences. Since the only reasonable inference therefrom is that the statutory requirements were not complied with, the trial court's finding that a sale was made "in compliance with the pertinent provisions of the Vehicle Code" is unwarranted and not binding on this court. (*Hicks* v. *Reis* (1943) 21 Cal.2d 654, 660-661 [134 P.2d 788]; *Isenberg* v. *California Emp. Stab. Com.* (1947) 30 Cal.2d 34, 40 [180 P.2d 11].)

 Nevertheless although section 5600 had not been complied with, there was an actual sale of the car as between the vendor (Ditsch) and the vendee (Mrs. Hall). The provisions of the Vehicle Code relating to the registration of title and ownership, including those requirements prescribed by section 5600, "were enacted in the interest of the public welfare to protect innocent purchasers and afford identification of vehicles and persons responsible in cases of accident and injury." (*Henry* v. *General Forming, Ltd.* (1948) 33 Cal.2d 223, 227 [200 P.2d 785]; *Stoddart* v. *Peirce* (1959) 53 Cal.2d 105, 117 [346 P.2d 774]; *Venne* v. *Standard Accident Ins. Co.* (1959) 171 Cal.App.2d 242, 247 [340 P.2d 30].) In the *Stoddart* case, *supra*, the court declared that the language found at the beginning of former section 186[3] (now section 5600) "should not be construed in a strict or literal

---

[2]We need not consider, as plaintiffs argue, noncompliance with section 5602 also. As pointed out in *Venne* v. *Standard Accident Ins. Co.* (1959), *infra*, 171 Cal.App.2d 242, 246, compliance with section 5602 (former § 178) merely effectuates a release from civil liability under sections 17150-17157 (former § 402) and is not of itself sufficient to transfer title under the motor vehicle registration laws.

[3]The language referred to is as follows: "No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties ..." (P. 116.) Section 5600 is the same except for a slight change of language.

sense.'' We quote further from *Stoddart:* ''Insofar as the legal title of the party failing to comply with the statutory requirement, or his liability to a third person is concerned there is little doubt that the quoted language means just what it says. But this does not mean that no equitable title passes. ... It would also defeat the obvious legislative intent to hold that, as between the parties, the law recognized no transfer of a financial interest merely because one or more of the parties failed to comply with the registration statutes.'' (Pp. 116-117.)

It is clear that Mrs. Hall, the plaintiff in the instant action, does not fall within the class of persons for the protection of whom the above statute was designed. She makes no claim that she has been defrauded as an innocent purchaser from Ditsch. Nor does her involvement in an accident bring her under the protection afforded by the statute. The primary purpose of the statute is to afford relief to *third persons* who suffer damage as a result of the driver's negligence and not to the driver who is himself responsible for the accident.

There is a close analogy between the instant case and *Venne* v. *Standard Accident Ins. Co., supra,* 171 Cal.App.2d 242. In that case Celeste Venne was the owner of an Oldsmobile covered by an insurance policy issued to her by the defendant insurance company. The policy provided coverage to persons using the car with the permission of the insured. On June 29, 1956, Celeste made a bona fide sale of the car to her brother, Raymond Venne, plaintiff therein, and at that time delivered to him possession of the automobile, the endorsed certificate of ownership and the certificate of registration. Notice of the transfer however was not received by the Department of Motor Vehicles until July 6, 1956. On June 30, 1956, the day following the sale, Raymond was involved in a traffic accident, for which he had his own insurance coverage. As a result of the accident, an action was commenced against Celeste and Raymond. Demand made on Standard (Celeste's carrier) to defend Raymond was rejected by that company. Thereafter in a declaratory relief action commenced by Raymond and his insurance company against Standard, the court determined that the Standard policy covered the accident on a pro rata basis. Standard appealed contending as defendant does here that, as there was a sale of the car to Raymond, the latter was not using it at the time of the accident with Celeste's permission but as his own property. Plaintiffs in

*Venne* contended on the other hand, as plaintiffs herein do, that, as certain provisions of the Vehicle Code were not complied with, there was no effective transfer of ownership, that Celeste remained the owner and that Raymond was a permissive user.

The appellate court held that while by delivering possession of the car, the endorsed certificate of ownership and the registration card to the vendee, the vendor complied with former section 178 (now § 5602, see footnote 1, *ante*) and relieved herself of potential civil liability, there was nevertheless under the clear facts of the case no effective transfer of title prior to the accident because former section 186 (now § 5600) had not been complied with.

However the court went on to declare: ''While we are of the opinion that 178, subdivision (a) (1) compliance is not sufficient to transfer title under California's motor vehicle registration laws, it seems equally clear that, *as between Celeste and Raymond, there was an actual sale of the vehicle* and therefore it would be unrealistic to hold that Raymond was a permissive user of the automobile involved in the accident. The 'omnibus clause' extends coverage to the nonowner operator only if he has the permission of the owner to use the vehicle. Once the sale was made, Celeste had no permission to give or withhold; Raymond had an absolute right to possess and operate the subject automobile. Celeste could not prevent her vendee from using the vehicle nor could she legally reacquire possession herself without Raymond's consent. Since Raymond had the automobile plus the ownership and registration certificates he was at liberty to sell or otherwise deal with the automobile in any manner he desired. Under such circumstances, to argue that Raymond had the express or implied permission of Celeste to use the automobile would be to ignore the realities of the legal relationship between a vendor and vendee. This we may not do.'' (P. 246.) The court reversed the judgment with directions to enter a judgment for Standard.

We apprehend the rationale of *Venne* to be this: Where the vendor has no liability to third persons damaged by the negligent operation of the vehicle by the vendee, there may be an actual sale of the vehicle as between the vendor and vendee even though the transfer requirements of section 5600 have not been fulfilled. Such a holding that the vendee is not a permissive user of the vehicle neither offends the underlying policy of the registration statute (§ 5600) nor

frustrates the purpose of the owner's liability statutes. (§ 17150 et seq.)

Contrary to plaintiffs' claim, *Venne* is not distinguishable from the case at hand upon the ground that in *Venne* the endorsed certificate of ownership and the certificate of registration were delivered to the vendee before the accident. The analogy between the two cases rests on the principal contention to both. In both cases, it was urged that because the requirements of section 5600 had not been met, the vendor remained the owner of the vehicle and the vendor's insurance covered the vendee as a permissive user. In *Venne*, since compliance with section 5602 eliminated any liability of the vendor to *third persons*, noncompliance with section 5600 did not preclude recognition of an actual sale as between the parties or compel the conclusion that the vendor remained the owner of the vehicle. In the instant case, since there was never any liability to *third persons*, noncompliance with section 5600 should not force us to reach a different result.

Plaintiffs contend that the instant case should be governed by the decision of this court in *Harbor Ins. Co.* v. *Paulson* (1955) 135 Cal.App.2d 22 [286 P.2d 870]. *Harbor*, however, is clearly distinguishable. There the vendor sold and delivered the vehicle to the vendee who paid the purchase price in full. At no time however did either of the parties comply with any of the formalities required for the transfer of ownership by the Vehicle Code. It was there held that the vendor was liable to a *third person* injured by the negligent driving of the vendee and that the vendor, for purposes of omnibus coverage in a policy of public liability insurance issued to the vendor, was still the owner of the vehicle and that the vendee was driving with his permission. It is clear that in *Harbor* the court was effectuating the purposes of the registration statutes so as to protect a *third person* as against the vendor. As the court in the *Venne* case pointed out in distinguishing *Harbor* (see *Venne* v. *Standard Accident Ins. Co., supra*, 171 Cal.App.2d 242, 247-248) the vendor in the *Harbor* case did not comply with *any* of the sections of the Vehicle Code (§§ 5600, 5602) designed to relieve him from civil liability for permissive use (§ 17150 et seq.) and hence a holding that the vendee in *Harbor* was a permissive user was necessary in order to effectuate the purposes of the registration statutes and the owner's liability statutes. This distinction is recognized by the court in *Harbor*: "The result of the failure of a vendor in this state to meet the requirements of the Vehicle

Code is that, while *as between him and his vendee, the latter becomes the owner* of the vehicle, *as to third parties who are injured* by the vehicle still registered to him as owner, the *vendor remains the owner* and the vendee is using the vehicle with his permission.'' (P. 28; italics added.) ██ The instant case, contrary to *Harbor,* does not involve the protection of injured third persons.

The crucial question therefore which we face in the case before us is *not* whether the provisions of section 5600 were complied with (that they were not makes no difference here) but whether *as between the parties* a sale occurred prior to the accident so that at the time of the accident Mrs. Hall rather than Ditsch was the owner of the Thunderbird. The trial court answered this question in the affirmative. It found ''[t]hat Robert Ditsch sold a certain automobile to Linda Hall on May 29, 1961, in compliance with the pertinent provisions of the Vehicle Code.'' It is true, as we have already explained, that the last part of the finding referring to compliance with the Vehicle Code cannot be justified in the light of the uncontradicted evidence. The balance of the finding however is not subject to attack.

The trial court in effect found: first, that a sale of the vehicle by Ditsch to Mrs. Hall occurred on May 29, 1961; and secondly that such sale was in compliance with the provisions of the Vehicle Code. ██ Findings of fact must be liberally construed to support the judgment. (*Johndrow* v. *Thoma*s (1947) 31 Cal.2d 202, 207 [187 P.2d 681] ; *Woodbine* v. *Van Horn* (1946) 29 Cal.2d 95, 109 [173 P.2d 17] ; *Monell* v. *College of Physicians & Surgeons* (1961) 198 Cal.App.2d 38, 46 [17 Cal.Rptr. 744].) ██ It is clear that while the second part of the finding is not justified under the evidence, this fact does not vitiate the first part of the finding. It does no violence to the finding as a whole to construe it as determining that there was a sale even though it did not comply with the Vehicle Code. In the light of the authorities discussed above, reference to compliance with the Vehicle Code under the particular facts of this case is surplusage. ██ Findings, otherwise sufficient, will not be held defective because they include matters that may be rejected as surplusage. (*Hopkins* v. *Warner* (1895) 109 Cal. 133, 139 [41 P. 868] ; *Morris* v. *Turley* (1928) 94 Cal.App. 691, 695 [271 P. 916].) ██ Furthermore once the court found that a sale occurred on May 29, 1961, a further finding that such sale was in compliance with the Vehicle Code was here not neces-

sary to support the judgment. ▮ A finding not necessary to support the judgment may be disregarded. (*Baglione* v. *Leué* (1958) 160 Cal.App.2d 731, 733-734 [325 P.2d 471]; *Feykert* v. *Hardy* (1963) 213 Cal.App.2d 67, 77 [28 Cal. Rptr. 510].) We are of the view that the court expressly found that Ditsch sold the Thunderbird to Mrs. Hall prior to the accident.[4]

▮ It is obvious that this finding that a sale had occurred on May 29 is supported by abundant evidence. Ditsch delivered possession of the car to Mrs. Hall on May 26; he executed and delivered to the Bank on May 29 a document transferring all his interest in the car to Mrs. Hall; on the same day he executed and delivered to the Bank a power of attorney to sign his name to the certificate of ownership. Realistically viewed, the evidence shows that Ditsch had done everything within his power to transfer to Mrs. Hall whatever interest he had in the car. From this evidence we think the trial court could have well determined that the parties intended that the property interest should pass from the vendor to the vendee on May 29 and hence that a sale occurred on that date. (Civ. Code, § 1738, subd. (1).) Since under this finding Ditsch no longer owned the Thunderbird after May 29, the trial court properly concluded that the insurance policy issued to him by defendant did not cover the automobile after such date.

▮ Plaintiffs urge in the alternative that, even though as between the parties Mrs. Hall may have been the owner, the case is not one between her and Ditsch but between her and Motors. It is argued that all doubts must therefore be resolved against Motors, plaintiffs relying on *Exchange Cas. & Surety Co.* v. *Scott* (1961) 56 Cal.2d 613 [15 Cal.Rptr. 897, 364 P.2d 833]. That case held that the insurer of the owner of the vehicle was liable for injuries caused a third person by the negligence of the driver who was an additional insured under the omnibus coverage clause of the owner's policy. *Exchange* did not involve any sale of the vehicle causing the accident or the problem of compliance with transfer requirements. In *Exchange* there was no issue of ownership. In the instant case the central question is not whether Mrs. Hall

---

[4]Assuming *arguendo* that there is no such express finding, we would have no hesitancy in concluding that such a finding results by necessary implication from the court's language. (*Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593]; *Greenberg* v. *Hastie* (1962) 202 Cal. App.2d 159, 173 [20 Cal.Rptr. 747]; *Pry Corp. of America* v. *Leach* (1960) 177 Cal.App.2d 632, 636 [2 Cal.Rptr. 425].)

was an additional insured but whether Ditsch was the owner at the time of the accident. Since the trial court determined that Mrs. Hall was then the owner, the question whether she was covered by Ditsch's policy was automatically disposed of. That policy covered only vehicles owned by Ditsch.

What we have just said also disposes of plaintiffs' final claim that as between Canadian and Motors, the coverage of Motors is *primary* while that of Canadian was *excess* "over any *other* valid and collectible insurance." (Italics added.) The simple answer is that there was no *other* insurance on the Thunderbird.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 26, 1964.