[Civ. No. 22170. First Dist., Div. One. Dec. 23, 1966.]

MERITPLAN INSURANCE COMPANY, Plaintiff and Appellant, v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant and Appellant.

452

Channell & McNamara and William R. Channell for Plaintiff and Appellant.

Ericksen, Ericksen, Kincaid & Bridgman, Richard D. Bridgman and Raymond W. Weaver, Jr., for Defendant and Appellant.

SIMS, J.—In this action for declaratory relief between two liability insurance carriers, each has appealed from the judgment.

The judgment awards the plaintiff and cross-defendant Meritplan Insurance Company, the insurer under a policy which expressly covered the negligent driver and the car involved, contribution to the extent of one-half the amount expended in the settlement of one of two claims arising out of an accident involving its insured. It complains on appeal that it was entitled to a larger sum, first, because the respective liabilities of the insurers should have been prorated in accordance with the respective limits of insurance in force, and, second, because the trial court failed to order any contribution for the sums it disbursed in connection with the settlement of the second claim.

The judgment relieved the defendant and cross-complainant Universal Underwriters Insurance Company, the insurer under a policy which covered the seller of the vehicle involved and which also admittedly covered the purchaser-driver because of the seller's failure to comply with provisions of law controlling registration, of all liability other than that set forth above. It contends that the court erroneously required it to contribute a sum in excess of the amount necessary after plaintiff's coverage was exhausted. Universal further asserts that, if it is liable at all, the court correctly refused to require it to contribute more than one-half of the claim; and that it properly was not required to contribute to the second claim because Meritplan was a volunteer in settling that matter, without notice to, or consultation with Universal.

Application of established principles to the uncontradicted facts of the case reflects that plaintiff's contentions must be sustained and that the judgment is erroneous.

*Meritplan's coverage*

The court found that the driver-purchaser purchased an automobile from the dealer-seller on September 19, 1959; that on or about September 22, 1959, Meritplan issued to him a

policy of liability insurance which described the automobile he purchased; and that up to the applicable policy limits, this insurance covered his liability arising out of an accident which occurred on September 30, 1959. The evidence reflects that the limits of bodily injury liability under this insurance were $10,000 for each person, and $20,000 for each accident.

*Universal's coverage*

The findings of the court reflect that in September 1959 the dealer-seller was insured with Universal; that following the sale to the driver-purchaser on September 19, 1959, the dealer-seller failed to comply with the provisions of sections 5900 and 5901 of the Vehicle Code; and that because of such failure Universal provided coverage, by operation of law, to the driver-purchaser, as well as to the dealer-seller, up to the applicable policy limits, for the injuries sustained by the claimant in the accident on September 30, 1959. The limits of bodily injury liability for this insurance policy were $200,000 for each person and $300,000 for each accident.

*Relative liability*

The trial court found that each insurer "provided primary and co-equal insurance coverage . . . and that each should pay one-half . . ." Its conclusions of law recite: "that equitably both the policy issued by Meritplan . . . and the policy issued by Universal . . . provided primary and co-equal insurance coverage, and that each insurance company is obligated to pay one-half . . ."

Universal acknowledges, as well it might, that under the foregoing circumstances its coverage is available for the payment of damages to the injured third person.[1] (See *Stoddart v. Peirce* (1959) 53 Cal.2d 105, 115 [346 P.2d 774]; *Truck Ins. Exchange* v. *Torres* (1961) 193 Cal.App.2d 483, 487-488 [14 Cal.Rptr. 408]; *Harbor Ins. Co.* v. *Paulson* (1955) 135

---

[1]An argument before the lower court, predicated upon 1957 statutory amendments, that a "garage endorsement" limited Universal's liability to the amount of its vicarious statutory liability as owner under the provisions of sections 17150 and 17151 of the Vehicle Code, has been abandoned. (See *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 145-146 and 150-154 [23 Cal.Rptr. 592, 373 P.2d 640] [cf. same case (1961) (Cal.App.) 17 Cal.Rptr. 259]; *Clark* v. *Universal Underwriters Ins. Co.* (1965) 233 Cal.App.2d 746, 748-749 [43 Cal.Rptr. 822]; *Pacific Indem. Co.* v. *Universal etc. Ins. Co.* (1965) 232 Cal. App.2d 541, 543 [43 Cal.Rptr. 26]; *Globe Indem. Co.* v. *Universal Underwriters Ins. Co.* (1962) 201 Cal.App.2d 9, 13-14 and 16-18 [20 Cal.Rptr. 73]; *Royal Exchange Assur.* v. *Universal Underwriters Ins. Co.* (1961) 188 Cal.App.2d 662, 665-666 [10 Cal.Rptr. 686].)

Cal.App.2d 22 [286 P.2d 870] ; *Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co.* (1955) 130 Cal.App.2d 158, 162-163 [278 P.2d 493].).

It now contends that as between the two insurers the coverage provided by the insurer of the driver-purchaser should be exhausted before resort is had to the insurance furnished by its policy. Meritplan, not only resists this contention, but also asserts that as concurrent insurers the companies should apportion the loss according to their policy limits and equally.

The decisions in this state support Meritplan. Under circumstances similar to those in this case it has been held that the insurer of the seller must contribute pro rata in accordance with the limits of coverage of the respective policies. (*Truck Ins. Exchange* v. *Torres, supra,* 193 Cal.App.2d 483, 489-492; *Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co., supra,* 130 Cal. App.2d 158, 164-167.)

Universal acknowledges that the foregoing authorities are contrary to its position but seeks to avoid their effect on several grounds. An alleged conflict with the decision of this court in *Canadian Indem. Co.* v. *Motors Ins. Corp.* (1964) 224 Cal.App.2d 8 [36 Cal.Rptr. 159] is not cognizable. That action involved collision insurance and the issue of who was the owner of the damaged property. The opinion pointed out that the provisions of the Vehicle Code were designed "to afford relief to *third persons* who suffer damage as the result of the driver's negligence and not to the driver who is himself responsible for the accident." (224 Cal.App.2d at p. 14.) It concluded that for the purpose at hand the sale should be recognized despite failure to comply with the provisions of the Vehicle Code sections (*id.,* p. 18).

Similarly it has been held that failure to comply with the provisions of the Vehicle Code will not give an attaching creditor of the transferor rights superior to a prior buyer with equitable title. (*Henry* v. *General Forming, Ltd.* (1948) 33 Cal.2d 223, 227 [200 P.2d 785].) The court stated: "The requirements for registration of title and ownership, as indicated by the code provisions, were enacted in the interest of the public welfare to protect innocent purchasers and afford identification of vehicles and persons responsible in cases of accident and injury." The foregoing purpose was also alluded to in *Venne* v. *Standard Accident Ins. Co.* (1959) 171 Cal.App.2d 242, 247 [340 P.2d 30]. In *Venne* the court reversed a judgment which had provided pro rata contributions

from the seller's insurer. The owner's compliance with the provisions of section 178 (now 5602) of the Vehicle Code by endorsement and delivery of the certificates of ownership and registration relieved him and his insurer of further liability. (171 Cal.App.2d 245-246.) The court went on to point out that the purchaser could not be a permissive user, even though title had not fully passed under the provisions of the Vehicle Code, where he not only had dominion over the vehicle, but also had the indicia of ownership (*id.*, pp. 246-248).

From the foregoing, Universal asserts that since between the seller and the purchaser the latter was the owner, equitable principles should be applied in these proceedings, where no third persons are involved, and the purchaser's insurance should first be applied to the loss.

Were the question one of first impression the fact that the purchaser's insurer has specifically selected him as a risk, whereas he is merely an additional insured of the seller's policy as a statutory (Veh. Code, § 16451) permissive user, might have some persuasive effect. ▪ It is well established, however, that both the seller and the purchaser may be considered as "owners" under the circumstances present in this case. ▪ "There is no doubt that the word 'owner' as used in section 402 for the purpose of creating a liability thereunder, is not synonymous with that word as used in the ordinary sense of referring to a person or persons whose title is good as against all others. ▪ Under the Vehicle Code there may be several such 'owners' at any one time. One or more persons may be an 'owner,' and thus liable for the injuries of a third party, even though no such 'owner' possesses all of the normal incidents of ownership [citation]." (*Stoddart* v. *Peirce, supra,* 53 Cal.2d 105, 115; and see *Truck Ins. Exchange* v. *Torres, supra,* 193 Cal.App.2d 483, 487-488.) Contentions similar to those advanced herein by Universal were advanced by the seller's insurer in *Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co.,* wherein the court rejected the suggestion that the driver-purchaser's insurance be considered primary, and that of the seller, secondary (130 Cal.App.2d at pp. 165-166). The court also refuted a further contention that the seller and his insurer should be only secondarily liable because they were entitled to be subrogated to rights against the driver, and pointed out that the seller's insurance directly covered the liability of the driver as a permissive user (Veh. Code, § 16451) as well as the owner's vicarious liability. (Veh. Code, §§ 17150, 17151.)

The equitable considerations referred to in *American Auto. Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 195-196 [318 P.2d 184]; *Colby* v. *Liberty Mutual Ins. Co.* (1963) 220 Cal.App.2d 38, 46-47 [33 Cal.Rptr. 538]; and *Truck Ins. Exchange* v. *Torres, supra,* 193 Cal.App.2d 483, 489-490, do not affect this case. In each of these cases such considerations were referred to in order to reconcile conflicting "pro rata" and "excess" other insurance clauses, with the result that the concurrent coverages were prorated.

In the instant case there is no such conflict. Universal's policy provides: "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; . . ." A proviso that the insurance shall be excess for a nonowned automobile is not effective for the reasons set forth above. (See *Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co., supra,* 130 Cal.App.2d 158, 165.) The other insurance clause in the Meritplan policy is practically identical.

It is, therefore, concluded that the insurers should bear the losses for which they both furnish coverage, in proportion to the respective policy limits. (*Traders etc. Ins. Co.* v. *Pacific Emp. Ins. Co., supra,* 130 Cal.App.2d 158, 164-167; and see *Standard Acc. Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1962) 206 Cal.App.2d 17, 22-23 [23 Cal.Rptr. 424].) No precedent is found for the trial court's action in apportioning the loss equally. The provisions of the policies should be given effect. (*Pacific Employers Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318, 327-329 [54 Cal.Rptr. 385, 419 P.2d 641].)

*The claim to be settled*

(1) Flynt claim: The trial court found that one Flynt received personal injuries as a result of the September 30, 1959 accident; that his claim for damages for personal injuries was settled by the payment of $10,500 of which Meritplan contributed $7,000 and Universal $3,500; that Meritplan paid $245[2] in attorneys' fees in defense of this claim; and that the parties agreed on February 16, 1961 that any payment made by either insurance company in settlement of the Flynt action

---

[2]According to the stipulation of the parties Meritplan paid out $245 in attorneys' fees in the Mobley matter, and $505 attorneys' fees and $121.48 costs in the Flynt matter.

would not constitute a waiver of either company's rights or obligations.

The court then proceeded to apportion this claim on the basis of equal contributions and gave Meritplan judgment for $1,750 principal, plus $122.50 attorneys' fees. For the reasons set forth above, the amounts expended in settlement and as costs of defense and settlement of this claim were improperly allocated.

(2) Mobley claim: The court further found that one Mobley sustained fatal injuries as a result of the same accident; that an action[3] was commenced by his survivors against the driver, to which the dealer-seller was not made a party; and that Meritplan settled that lawsuit for $10,000.

The stipulated facts reflect that the Mobley action, against the driver alone, was filed in Solano County (No. 34204) on October 29, 1959; that the Flynt action was filed against the driver in Placer County (No. 22224) on November 2, 1959, and that subsequently the dealer-seller was brought in as a defendant; that Meritplan consummated the Mobley settlement by the payment of $10,000 about October 10, 1960, without contribution from Universal; and that the Flynt settlement was effected about March 1, 1961 as set forth in the findings to which reference has been made.

The court found in effect that the pleadings and pretrial order limited this action to consideration of the Flynt claim.[4]

Meritplan attacks this finding. The complaint alleges that as a result of the accident "serious personal injuries were sustained by third parties"; and that Meritplan "has been called upon to defend certain claims against the [driver] and has expended sums in the nature of defense costs and sums paid in settlement of claims." (Italics added.) The prayer of the complaint is in general terms for declaratory relief and indemnification. The answer admits that "as a result [of the accident] certain personal injuries and a death occurred. . . ."

---

[3]Erroneously referred to as Placer County action No. 22224 in the findings.

[4]This finding reads as follows: "That it is true that the complaint of Meritplan Insurance Company, a corporation, in this declaratory relief action and the issues, as framed by the pretrial conference order . . . on file herein, made no mention of the settlement of the claim of the survivors of Emzie R. Mobley, and that the controversy between Meritplan Insurance Company, a corporation, and Universal Underwriters Insurance Company, a corporation, that resulted in this declaratory relief action, involved the respective rights and obligations with reference to the Dorsey Lee Flynt settlement."

Universal's cross-complaint is more strictly limited to the dispute over the proportionate liability for the $10,500 paid to satisfy the Flynt claim.

The pretrial order refers to "certain injuries and the death of an occupant of the other vehicle." It also expressly refers only to the Flynt claim and the respective contributions of the parties to the settlement thereof. Nevertheless, the nature of the case is broadly stated as "an action for declaratory relief between two insurance carriers each seeking a declaration of their respective rights and obligations under respective policies of insurance." The issues are similarly generally referred to as "The rights, liabilities, obligations and duties of the respective parties under the terms of the respective insurance policies, and with respect thereto, whether either of them is entitled to indemnification."

At the hearing Meritplan offered and Universal accepted a stipulation regarding facts which referred to Mobley's fatal injuries, the action brought by his survivors, the settlement of that action, and the attorneys' fees paid in connection therewith. No objection was made to this evidence on the ground that this claim was beyond the scope of the pleadings or pretrial order.

Universal's attorney did bring out that there was nothing to indicate that Universal was on notice of, or was a party to, or had referred to the defense of the Mobley claim in its negotiations with Meritplan. Meritplan stipulated that neither Universal nor its insured were parties to the Mobley action; that neither Meritplan nor its assured tendered the defense or settlement of the Mobley claim to Universal; and that in fact it was settled before they realized that the dealer-seller was "in the picture."

The trial court not only made the express findings concerning the Mobley claim and the issues which have been referred to above, but it also made express findings in accordance with the foregoing stipulations.[5] It further found that Meritplan

[5]These findings read: "That it is true that Meritplan Insurance Company, a corporation, never notified Universal Underwriters Insurance Company, a corporation, of the wrongful death claim involved in Action No. 22224; that it is true that neither Leslie Van Camp nor Meritplan Insurance Company, a corporation, ever tendered the defense of Action No. 22224 to Universal Underwriters Insurance Company, a corporation; that it is true that Meritplan Insurance Company, a corporation, never requested contribution from Universal Underwriters Insurance Company, a corporation, at any time prior to the filing of this declaratory relief action.

"That it is true that Meritplan Insurance Company, a corporation,

"was in legal effect a volunteer in settling the claim of the survivors of . . . Mobley"; and signed conclusions of law to the same effect.

Universal relies upon principles set forth in *Livernois* v. *Brandt* (1964) 225 Cal.App.2d 301 [37 Cal.Rptr. 279] as follows: "It is the general rule that a plaintiff must recover, if at all, upon the cause of action set forth in the complaint and not upon some other cause which may be developed by the proofs. (*Reed* v. *Norton*, 99 Cal. 617 [34 P. 333]; *Northern Ry. Co.* v. *Jordan*, 87 Cal. 23 [25 P.273]; *Tobola* v. *Wholey*, 75 Cal.App.2d 351 [170 P.2d 952].) In *People* ex rel. *Dept. Public Works* v. *Valley Drive-in Theater Corp.*, 206 Cal.App. 2d 309 [23 Cal.Rptr. 626], this court held that the pretrial order supersedes the issues raised by the pleadings and controls the subsequent course of the case as long as it remains unmodified. The parties and the court are bound by the agreed statement of the facts and issues and are not authorized to make findings contrary thereto without proper modification of the agreement and the pretrial order. See rule 216, California Rules of Court. No request was here made for amendment of the pleadings nor for amendment of the pretrial order." (225 Cal.App.2d at p. 305.)

Here, however, neither the pleadings, pretrial order, nor agreed facts are so confining. ▮ Rather the case is governed by the following: "It is well settled that where the parties and the court proceed during the trial upon a theory that a certain issue is presented for adjudication, the doctrine of estoppel precludes either party from thereafter asserting that no such issue was in controversy, even though it was not actually raised by the pleadings. [Citations.]" (*Estate of Pieper* (1964) 224 Cal.App.2d 670, 680 [37 Cal.Rptr. 46].)

In *Hodges* v. *Lochhead* (1963) 217 Cal.App.2d 199 [31 Cal. Rptr. 879], a similar situation is posed and resolved as follows: "Next, defendants point out that the 'Pre-trial Conference Order does not include damages or rental value as an issue' and that the effect thereof is to eliminate such issue from the case. [Citations.]

"Nevertheless, plaintiff, defendants, and the trial court all

settled Action No. 22224 solely because of its contractual obligations under its applicable policy issued to Leslie Van Camp; that it is true that Meritplan Insurance Company, a corporation, settled Action No. 22224 without any prior discussion or correspondence of any kind with Universal Underwriters Insurance Company, a corporation, relating to the claim of the survivors of Emzie R. Mobley."

treated it as an issue in dispute at the trial. Plaintiff was the
only witness who testified as to rental value and her figure
was $115 per month. No objection to this testimony was made
at any time by defendants on the ground that rental value
was no longer an issue in the case. The *sole* objection made by
defendants' counsel to plaintiff's testimony as to rental value
was stated as follows: 'I will object to the question as calling
for an opinion of the witness. . . . It is my position that it is
calling for an opinion of a person who is not qualified to give
an opinion.' The colloquy that followed, between the court
and counsel, clearly indicates that the case was tried upon the
theory that rental value was an issue to be determined by the
trial court in the event plaintiff was determined to be the
owner of the property.

"Defendants' failure to object to testimony as to rental
value on the ground that it did not pertain to any issue before
the court constitutes a waiver of such objection. As stated in
*Collison* v. *Thomas,* 55 Cal.2d 490, 498 [11 Cal.Rptr. 555, 360
P.2d 51] : ' "A party cannot permit an issue to be litigated
and on appeal escape the consequences by claiming that such
issue was not pleaded." [Citations.] While the pretrial order
now frames the issues remaining in dispute [citation] and in
this respect supersedes the pleading [citation], the quoted
rule should be equally applicable however the issues are
framed.' [Citation.]

"The soundness of this principle is manifest in this case.
The trial proceedings clearly show that plaintiff never
intended to abandon her claim for damages nor did the
defendants ever make any contention during the trial that she
had. If the objection now urged by defendants had been made
at the trial, the matter could have been disposed of very
readily." (217 Cal.App.2d at pp. 205-206.)

The question remains: Did the trial court properly deny
indemnification in connection with the amounts paid out to
defend and settle the Mobley claim?

▮▮▮ The agreement referred to in connection with the
Flynt claim will not support an agreement to reserve and
litigate the respective liabilities under the Mobley claim. The
complaint alleged the agreement in general terms, quoting
from Universal's telegram, as follows: "that any payment
made by either arising out of the above accident will not be
set up as a defense by either under the theory of estoppel or
that the payment was made as a volunteer in any subsequent

litigation involving either company and that neither company waives any rights." In its answer Universal admitted the agreement, but confined its application to the Flynt claim. The finding which so limited the agreement is sustained by the evidence which reflects that the telegram was dispatched pursuant to a request in a Meritplan letter which referred solely to the settlement of the Flynt case.

In *Fidelity etc. Co.* v. *Fireman's Fund Indem. Co.* (1940) 38 Cal.App.2d 1 [100 P.2d 364], the plaintiff and defendant had each issued liability insurance policies with pro rata clauses which covered the accident in question. The insured promptly notified the plaintiff company which investigated and commenced negotiations for settlement of the claim. Some 14 months after the accident the insured and the plaintiff company notified the defendant company of the loss and its possible liability. The defendant company denied liability because of delayed notice and other grounds. The plaintiff effected a settlement and paid one-half thereof directly, and one-half by a loan to the insured, who in turn paid the other one-half. A judgment denying plaintiff recovery of a proportionate part of the settlement from defendant was affirmed. The court reviewed the authorities, principally from the field of fire insurance, and concluded: "These cases establish that in the event of double insurance, since each company insures for the full amount, if one pays the full loss it may force contribution from the other. But coinsurance is *pro rata* insurance and neither company can be required to pay more than its share. If it does, the excess payment is purely voluntary, and contribution cannot be claimed from the other." (38 Cal.App.2d at p. 6.)

The court refused to distinguish between property insurance and liability insurance on the ground that in the former the establishment of the loss and its amount were readily ascertainable, whereas in the latter the obligation extended to participating on behalf of the insured in the determination of the existence and extent of the liability. The opinion acknowledged that the only authority carrying the established fire insurance doctrine into the liability insurance field was *American Casualty Co.* v. *Maryland Casualty Co.* (D.C. Pa. 1937) 20 F.Supp. 561, but considered the meaning established by the cases in other fields of insurance as binding precedents.

The Supreme Court denied a hearing in the *Fidelity* case, and it has consistently been cited as authority for the proposi-

tion that a prorate provision renders the insurer "liable for its pro-rata portion of the loss . . . and the insured after paying can collect that much and no more from that insurer." (*American Auto. Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 199 [318 P.2d 84], quoted in *Colby* v. *Liberty Mutual Ins. Co., supra*, 220 Cal.App.2d 38, 47; *Truck Ins. Exchange* v. *Torres, supra*, 193 Cal.App.2d 483, 490; *Apparel Mfrs. Supply Co.* v. *National Auto. & Cas. Ins. Co.* (1961) 189 Cal.App.2d 443, 473 [11 Cal.Rptr. 380].)

In *Pacific Indem. Co.* v. *California State Auto. Assn.* (1961) 190 Cal.App.2d 293 [12 Cal.Rptr. 20], the court found that the driver's insurance was excess over that carried by his employer. In respect of a second count wherein the employer's insurer sought contribution for a settlement it alone had effected after notice to the other carrier, the opinion states: "In addition, appellant may not have contribution here on a pro rata basis, for having satisfied the judgment, the instant case is subject to the rule that where two insurance companies cover a risk of loss with 'pro rata insurance,' neither company may be forced to pay more than its share. If it does, the excess payment is purely voluntary and contribution cannot be claimed from the other. (*Fidelity etc. Co.* v. *Fireman's Fund Indem. Co.* (1940) 38 Cal.App.2d 1, 6 [100 P.2d 364].) The appellant having no enforceable right to contribution, the second count does not state a cause of action." (*Id.,* at p. 297.)

In *Financial Indem. Co.* v. *Colonial Ins. Co.* (1955) 132 Cal.App.2d 207 [281 P.2d 883], reference is made to the principle first quoted above from the *Fidelity* case. The court rejected the argument that the obligation to defend the insured was analogous to an obligation to pay the whole loss so that multiple insurers would be cosureties and have reciprocal rights and obligations for contribution to the costs of defense by one. It found that the obligation of each to defend was independent and that no contribution could be granted. (132 Cal.App.2d at pp. 210-211.) This last principle and later cases which followed it[6] were expressly disapproved

---

[6] "The decisions in *Pacific Indem. Co.* v. *California State Auto. Assn.* (1961) *supra*, 190 Cal.App.2d 293, *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch.* (1961) *supra*, 190 Cal.App.2d 194 [11 Cal.Rptr. 762], and *Financial Indem. Co.* v. *Colonial Ins. Co.* (1955) *supra*, 132 Cal.App.2d 207, are disapproved insofar as they are inconsistent with the conclusions hereinabove stated." (57 Cal.2d at p. 38.)

in *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455]. In that case the respective liabilities of three insurers were determined, and the court further approved that part of a judgment which awarded to the defending insurer, the other two having refused to cooperate, contributions for costs in proportion to the respective liabilities of the companies. The court stated: "The obligation to defend the insured is no less important than the contract to indemnify. In fact, where the insurer defaults in defending, the indemnity obligation will be held to cover all expenses reasonably incurred by the insured in providing his own defense. . . . In our view, it is but corollary to the above quoted proposition to hold, as we do, that no insurer which deliberately breaches its obligation to the insured should be permitted thereby to profit, whether at the expense of the insured, or of an insurer which faithfully discharges its obligation." (57 Cal.2d at pp. 37-38; and see *Pacific Indem. Co.* v. *Universal etc. Ins. Co., supra,* 232 Cal.App.2d 541, 543-544.)

The foregoing leads to consideration of the right of one insurer to be subrogated to its insured's claims against a coinsurer. This approach has furnished recourse to the defending and paying insurer, and has narrowed the portals through which the nonparticipating insurer can escape liability.

In *Continental* the opinion recites: "Under general principles of equitable subrogation, as well as pursuant to the rule of prime importance—that the policy is to be liberally construed to provide coverage to the insured—it is our view that all obligated carriers who have refused to defend should be required to share in costs of the insured's defense, whether such costs were originally paid by the insured himself or by fewer than all of the carriers. A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus, by leaving the insured to his own resources, enjoys a chance that the costs of defense will be provided by some other insurer at no expense to the company which declines to carry out its contractual commitments. As commented in another context by the court in *Employers etc. Ins. Co.* v. *Pacific Indem. Co.* (1959) 167 Cal.App.2d 369, 381 [11] [334 P.2d 658], quoting from *Massachusetts Bonding & Ins. Co.* v. *Car & Gen. Ins. Corp.* (1957) 152 F.Supp. 477, 482, 'there are . . . compelling

reasons for allowing recovery when the other insurer has not entered the case at all or has refused to defend the insured against suit by the injured party. . . . [T]his view represents the current trend and better rule in the "volunteer" situations.' " (57 Cal.2d at p. 37.)

The same principle has been recognized, in addition to the cases cited, in *Hartford Accident & Indem. Co. v. Transport Indem. Co., supra*, 242 Cal.App.2d 90, 94 [51 Cal.Rptr. 168] and *Wasson v. Atlantic National Ins. Co.* (1962) 207 Cal.App.2d 464, 470-472 [24 Cal.Rptr. 665]; and see *Fireman's etc. Co. v. State Comp. etc. Fund* (1949) 93 Cal.App. 2d 408, 412-413 [209 P.2d 55].

In an annotation in 21 A.L.R.2d 611 (1952) on the subject "Apportionment of losses among automobile liability insurers under policies containing pro rata clauses," the author states: "Despite the relative lack of direct authority, it appears to be well settled that where one of the insurers, despite the existence of the pro rata clause, pays a larger proportion of the amount than it is legally bound to do, no right of contribution exists against the other insurers, this on the ground that such excess payment is viewed as a purely voluntary payment." (21 A.L.R.2d at p. 613; and see 7 Am.Jur.2d, Automobile Insurance, § 203, p. 546; 29A Am. Jur., Insurance, §§ 1717-1718, pp. 795-797; 46 C.J.S., Insurance, § 1207, pp. 150-152.) The statement referring to poverty of authority is well taken. The case cited, and upon which this court relied in the *Fidelity* case (38 Cal.App.2d at p. 7), i.e., *American Casualty Co. v. Maryland Casualty Co.* (D.C. Pa. 1937) *supra*, 20 F.Supp. 561, was a case in which the court expressly found there was, in fact, no coinsurance. Even the dictum referred to has been discredited. (See *Massachusetts Bonding & Ins. Co. v. Car & Gen. Ins. Corp.* (E.D. Pa. 1957) 152 F.Supp. 477, 482.) An examination of this and other cases[7] referred to in the *Employers etc. Ins. Co.* case (167

---

[7]*United States Guarantee Co. v. Liberty Mut. Ins. Co.* (1943) 244 Wis. 317 [12 N.W.2d 59, 150 A.L.R. 632]; *Maryland Cas. Co. v. Employers Mut. Liability Ins. Co.* (D.C. Conn. 1953) 112 F.Supp. 272; *Commercial Standard Ins. Co. v. American Emp. Ins. Co.* (6th Cir. 1954) 209 F.2d 60; *Detroit Auto. Inter-Ins. Exch. v. Detroit Mut. Auto. Ins. Co.* (1953) 337 Mich. 50 [59 N.W.2d 80]; *United States Fidelity & Guaranty Co. v. Elam* (1955) 198 Tenn. 194 [278 S.W.2d 693]. See also *Clow v. National Indem. Co.* (1959) 54 Wn.2d 198 [339 P.2d 82]; *National Farmers Union Prop. & Cas. Co. v. Farmers Ins. Group* (1963) 14 Utah 2d 89 [377 P.2d 786] and *Kolker Chemical Corp. v. Lumbermens Mut. Cas. Co.*

Cal.App.2d at pp. 376-381), supports the conclusion quoted therefrom in *Continental* (57 Cal.2d at p. 37, *supra*).

█ From the foregoing it is concluded that Meritplan was not a volunteer at the time it effected the settlement with Mobley's survivors. It was subject to a liability, maximally, in the sum of $10,000. According to its version it did not know of the existence of other insurance at the time it effected the Mobley settlement. Under such circumstances it should not lose the right to subrogation because of failure to give notice to an insurer of whose existence it was ignorant. In *United States Fidelity & Guaranty Co.* v. *Church* (N.D. Cal. 1952) 107 F.Supp. 683, the court held that the general liability insurer was entitled to be subrogated to its insured's right to secure recovery from the carrier of extended insurance which covered the negligent employee of the named insured in the former policy. The carrier of the extended insurance sought to evade responsibility because it was not given timely notice of the loss. The opinion states: "Canadian's technical policy defense, predicated upon the asserted failure of Goff to give notice, is ineffective to alter the foregoing. Canadian has consistently denied that Goff was an insured, and *he was in no position to give notice when he was ignorant of the coverage.* [Citation.] In addition, where the Company had actual knowledge and was not prejudiced by failure of notice, the technical policy defense fails, *Abrams* v. *American Fidelity & Cas. Co.,* 32 Cal.2d 233 [195 P.2d 797]." (107 F.Supp. at pp. 688-689, italics added; and see *Hanover Ins. Co.* v. *Carroll* (1966) 241 Cal.App.2d 558, 565-567 [50 Cal.Rptr. 704].)

The facts do not disclose when Universal's insured was joined as a party to the Flynt action. It well may be urged that from that time forward Meritplan had knowledge that the dealer was involved. This does not necessarily mean that it had knowledge of Universal's coverage. In *Wasson* the opinion recites: "True, Fireman's Fund had learned, during its investigation that an unloading operation involving Western's truck had been in progress but this is not an item of intelligence calculated to prompt it to inquire into, and

(1963) 81 N.J. Super. 556 [196 A.2d 266] wherein prior cases are collected; and cf. *Farm Bureau Mut. Auto. Ins. Co.* v. *Buckeye Union Cas. Co.* (1946) 147 Ohio St. 79 [67 N.E.2d 906]; *Fireman's Fund Indem. Co.* v. *Shelby Mut. Cas. Co.* (1953) 95 Ohio App. 88 [117 N.E.2d 477]; *Traders & General Ins. Co.* v. *Hicks Rubber Co.* (Tex. 1943) 169 S.W. 2d 142.

ascertain the type of coverage contained in, Western's policy of liability insurance. Facts ascertained in the investigation did not necessarily involve Western in the then unfiled lawsuit and, as a matter of fact, Western was not named in the original complaint. Moreover, when Western *was* brought in, the claim of negligence against it was dismissed by nonsuit. Certainly, it cannot be said as a matter of law that knowledge on the part of Fireman's Fund that a truck belonging to Western was being unloaded at the approximate time of the accident (but the operations of which were wholly outside the chain of causation of the accident) imposed upon Wasson a duty of examination of the truck owner's policy provisions.'' (207 Cal.App.2d at p. 469.)

Even knowledge of the coverage would not necessarily make Meritplan a volunteer. It was liable for a maximum of $10,000 on the claim asserted in the action brought by Mobley's survivors. Whether or not it would be entitled to proration would not be determined until the liability was ascertained to be less than the total of the limits of all applicable insurance.

Of the cases referred to, substantially all involve situations where the defense was tendered to the coinsurer and it denied liability. This fact should not be determinative. Failure to grant contribution unjustly enriches the unknown as well as the recalcitrant insurer. (See *Continental Cas. Co. v. Zurich Ins. Co., supra,* 57 Cal.2d at p. 37; and *Wasson v. Atlantic National Ins. Co., supra,* 207 Cal.App.2d 464, 469.) It is recognized that failure to grant contributions would encourage a coinsurer to deny liability (*id.*). Here Universal must have received notice of the claim against Meritplan's insured, at or about the same time as Meritplan received notice of the dealer's implication. Under such circumstances failure to grant contribution would encourage a coinsurer to conceal and evade its coverage—a result to be avoided equally as much as an unwarranted denial of coverage.

This is not to say that the coinsurer may not set up facts in defense of the claim to which it is asked to contribute on the basis of the coinsurer's subrogated right to the indemnity owed the insured. ''Where one seeks indemnity (or contribution under a coinsurance clause) for an amount voluntarily paid without waiting for judgment, he must prove the actionable facts upon which the original liability depends as well as the reasonableness of the amount paid, . . . .'' (*Roy-*

*al Indem. Co.* v. *American Casualty Co.* (1956) 5 Misc.2d 533, 536 [159 N.Y.S.2d 45, 47].)

 In this case the liability is established by Universal's acknowledgment of the validity of the Flynt claim. No determination has been made as to whether the settlement of the Mobley claim was fair and reasonable, or whether Universal was prejudiced because it did not have notice of that action or the settlement effected. The finding that Meritplan is barred from recovery because it "was in legal effect a volunteer" is not sustained by the law or the facts. The other facts found (see fn. 5) do not by themselves require a finding against contribution to the sums paid in defense and discharge of the *Mobley* claim.

The judgment is reversed with directions to the trial court to receive such evidence as may be offered upon the reasonableness of the settlement effected in connection with the Mobley claim, and upon the prejudice, if any, to Universal by reason of the failure to include it in such negotiations. The trial court is further directed to prepare findings of fact and conclusions of law and to enter judgment in accordance with the determination of the respective obligations of the insurers as set forth in this opinion. Let Meritplan recover its costs on both appeals.

Bray, J.,* concurred.

---